**Saadallah JABRI and Aida Jabri, Appellants,**

v.

**Jamal QADDURA, Appellee.**

and

**Rola Qaddura, Appellant,**

v.

**Jamal Qaddura and Osama Qaddura, Appellees.**

Nos. 2–02–415–CV, 2–02–416–CV.

Court of Appeals of Texas, Fort Worth.

May 8, 2003.

Janice A. Schattman, Fort Worth, for Appellants.

Donald T. Fulton, Fort Worth, for appellee, in No. 02–02–415–CV.

Donald T. Fulton, Fort Worth, Osama Qaddura, Arlington, for Appellees, in No. 02–02–416–CV.

PANEL A: CAYCE, C.J.; DAY and HOLMAN, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

These consolidated appeals involve the denial of Appellants' motions to stay litigation and compel arbitration under the Texas General Arbitration Act. We reverse and render judgment in favor of Appellants.

### BACKGROUND

**The parties to this litigation:**

There are five parties to these two consolidated appeals: a husband and wife, the wife's parents, and the husband's brother.

Rola Qaddura and Jamal Qaddura were married on September 3, 1993. Previously, on August 28, 1993, they had signed an "Islamic Society of Arlington Islamic Marriage Certificate" which reflects that the

"dowry for the bride" was: "One-half of the value of the house located at 2206 Gladstone. This is in addition to $40,000 Fourty [sic] Thousand U.S. Dollars the payment of which is deferred."

On October 19, 1999, Rola filed for divorce. She sought sole managing conservatorship of the parties' two children, child support, division of the parties' estate, and enforcement of the terms of the Islamic Marriage Certificate. Rola subsequently sued Jamal's brother, Osama Qaddura, as a third-party defendant, alleging he was engaged in a conspiracy with Jamal whereby Jamal was wrongfully transferring community assets to Osama, including a house on Vesta Via Court.

Jamal filed a counterclaim seeking sole managing conservatorship and child support. He sought a declaration that the Islamic Marriage Certificate was unenforceable because it was induced by Rola by fraud. He also alleged a separate cause of action against Rola for "defamation and false light," in which he sought $250,000 actual damages and $1,000,000 exemplary damages.

Osama filed a counterclaim seeking a declaratory judgment that he is the sole owner of the house on Vesta Via Court (with no right of reimbursement by Rola or Jamal) and of a specific bank account.

On January 18, 2002, Jamal filed a separate suit seeking a protective order against Rola's parents (the children's grandparents), Saadallah Jabri and Aida Jabri, alleging the children had been injured while in their care.

### The partial summary judgment:

On April 27, 2001, the trial court granted Jamal's motion for partial summary judgment in the divorce case. The court

found: the "purported Islamic Dowry agreement" is not an enforceable agreement under Texas law, nor is it a valid or qualified premarital agreement under the Texas Family Code; the house on Gladstone Drive is the separate property of Jamal; the house on Vesta Via Court is owned by Osama; and two certificates of deposit (for $102,348 and $5,398) are currently non-existent and neither party has a claim of reimbursement for the monies. Accordingly, the trial court's partial summary judgment ordered that Rola take nothing on these claims.

### The Arbitration Agreement:

On September 25, 2002, all five parties signed an "Arbitration Agreement." This document recites, in full, that the parties:

after consultation with their respective attorneys, agree to submit all claims and disputes among them to arbitration by the TEXAS ISLAMIC COURT, 888 s. Greenville Ave., suite 188, Richardson, Texas, as follows:

A.  Cause No. 322–291577–99, styled "In the Matter of the Marriage of Rola Jabri Qadura and Jamal Qaddura and In the Interest of Noor Qaddura and Farah Qaddura Minor children", pending in the 322nd Judicial District Court of Tarrant County, Texas.

B.  Cause No. 76–184050–00, Styled "Jamal Qaddura Versus Saadallah Jabri", pending in the 67th Judicial District Court of Tarrant County, Texas.[1]

C.  Cause No. NO. 322–328238–02 (FORMERLY 325–328238–02), styled "Jamal Qaddura v. Saadallah Jabri and Aida Jabri" pending in

---

1.  Cause No. 76–184050–00 is not part of these consolidated appeals and is not pending before this court.

the 322 Judicial District Court of Tarrant County, Texas.

1. The Parties agree to arbitrate all existing issues among them in the above mentioned Cause Numbers in the appropriate District Court, which includes the Divorce Case, the child custody of the [sic] Noor Qaddura and Farah Qaddura, the determination of each party's responsibilities and duties according to the Islamic rules of law by Texas Islamic Court.

2. All parties agree to sign the Texas Islamic Court required legal forms, and each party pays his required fees.

3. The panel of arbitrators of Texas Islamic Court will be formed according to the rules and regulations of Texas Islamic Court. However, the parties agree and suggest the following names for the panel:

.Mujahid Bakhash, the Imam of the Islamic Association of Tarrant County, Fort Worth, Texas.

.Main El-quda, the Imam of the Islamic Society of Arlington, Arlington, Texas.

.Abdel Salam Abu–Nar, the Imam of Dar Assalam Islamic Center, Arlington, Texas

4. Each Party will submit all of his documents, exhibits, and evidence to Texas Islamic Court.

5. The parties agree that the Ruling of the Texas Islamic Court in the above mentioned Cause Numbers is Binding, and Final, and no party will take any appeal or future legal action of any matter afterwards.

6. Each party will cause the above cause numbers to be abated pending the decision by the arbitrators, and submit the decision of the arbitrators for adoption by the respective courts. The parties will ask the courts to refer the cases for arbitration to Texas Islamic court within

"Seven Days" from the establishment of the Texas Islamic Court panel of Arbitrators. The assignment must include ALL cases, including those filed against or on behalf of other family members related to the parties. Each party will notify the other party, Texas Islamic Court, and their respective attorneys, in writing of the assignment of all the above Cause Numbers from the above appropriate District Court to Texas Islamic Court.

All five parties signed this Arbitration Agreement, as did the attorneys for Jamal, Rola, and Saadallah. The document was witnessed by four other individuals whose signatures are on the document. At the hearing on Appellants' motion to compel arbitration, Appellants' attorney explained the circumstances regarding the parties' decision to submit to arbitration:

> The parties got together and approached my client, Rola Qaddura, with the proposal that they submit this to arbitration. The parties got together over the weekend. They all signed it and then directed their attorneys to take whatever legal action was necessary to enforce the arbitration.

On September 30 and October 3, 2002, the same five parties, and the same two attorneys, signed a document entitled "Stipulations and Agreements Covering Arbitration." This document reiterates much of the binding language of the Arbitration Agreement and specifies that the parties agree to be bound by the rules of arbitration of the Texas Islamic Court.

A dispute arose among the parties over the scope of the issues that were subject to arbitration under the Arbitration Agreement, and on October 7, 2002 Rola filed a motion in the divorce suit seeking to stay

litigation and compel arbitration.[2] Saadallah and Aida filed an identical motion in the protective order suit. Appellees did not file written objections or responses to Appellants' motions.

### The hearing in the trial court:

On November 14, 2002, the trial court held a hearing on Appellants' motion to compel arbitration. The court heard argument of counsel, and Appellants established that the signatures on the Arbitration Agreement and the stipulations document were authentic.[3] The attorney representing Rola, Saddallah, and Aida and the attorney representing Jamal told the court their clients could not agree on what issues were covered by the Arbitration Agreement.

Appellants argued it covered every issue raised in the pending lawsuits, including those issues upon which the trial court had previously entered interlocutory rulings (specifically, the matters covered by the partial summary judgment, which ruling Appellants emphasized was interlocutory and subject to being changed by the court until final judgment is entered).[4] Appellants told the court that since there was a dispute about the scope of the Arbitration Agreement, pursuant to the Texas General Arbitration Act it was the court's duty to decide what the Arbitration Agreement covered.

Appellee Jamal argued in favor of arbitration but claimed the Arbitration Agreement only covered those issues that had not been previously determined by the court (that is, the Arbitration Agreement excluded the subject matter of the prior partial summary judgment). Appellee Osama's attorney stated he revoked his client's signature and consent to the Arbitration Agreement.[5]

The trial court determined the parties disagreed regarding the scope of the Arbitration Agreement and it therefore was not valid or binding. The court denied Appellants' motions to stay litigation and compel arbitration. The trial court did not make findings of fact or conclusions of law.[6] Rola, Saadallah, and Aida have appealed the court's orders refusing to compel arbitration and denying a stay of the pending proceedings.[7]

### THE TEXAS GENERAL ARBITRATION ACT

The Texas General Arbitration Act provides:

#### § 171.001. Arbitration Agreements Valid

---

2. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.021, 171.025 (Vernon Supp.2003).

3. Osama did not attend the hearing. His attorney informed the court that the attorney was not present when the two arbitration documents were signed, he did not sign the documents on behalf of his client, and he could not agree that the signature on the documents belonged to his client. The court, however, determined the signature belonged to Osama.

4. Appellants' attorney stated that after she became involved in the case she filed a motion to set aside the partial summary judgment.

5. Osama's attorney attempted to persuade the trial court to sever the partial summary judgment from the remainder of the case so the judgment in favor of his client could be final. The court denied the motion to sever.

6. *See* TEX.R.APP. P. 28.1 ("The trial court need not, but may—within 30 days after the order is signed—file findings of fact and conclusions of law.").

7. The divorce suit is appeal no. 2–02–416–CV; the protective order suit is appeal no. 2–02–415–CV. This court previously granted Appellants' motion to consolidate the two suits for purposes of appeal.

(a) A written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that:

(1) exists at the time of the agreement; or

(2) arises between the parties after the date of the agreement.

(b) A party may revoke the agreement only on a ground that exists at law or in equity for the revocation of a contract.

TEX. CIV. PRAC. & REM.CODE ANN. § 171.001. A court shall order the parties to arbitrate on application of a party showing an agreement to arbitrate, and the opposing party's refusal to arbitrate. *Id.* § 171.021(a). If a party opposing the application denies the existence of the agreement, the court shall summarily determine that issue. *Id.* § 171.021(b). The court shall order the arbitration if it finds for the party that made the application. *Id.* An order compelling arbitration must include a stay of any proceeding subject to section 171.025. *Id.* §§ 171.021(b), 171.025.

A party seeking to compel arbitration must establish the existence of an arbitration agreement, and show that the claims raised fall within the scope of the agreement. *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 (Tex. 1999) (orig.proceeding). Once the party establishes a claim within the arbitration agreement, the trial court must compel arbitration and stay its own proceedings. *Id.; Ikon Office Solutions, Inc. v. Eifert,* 2 S.W.3d 688, 693 (Tex.App.-Houston [14th Dist.] 1999, no pet.). The trial court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations of the parties. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 269 (Tex.1992) (orig.proceeding). The court must conduct an evidentiary hearing, however, when there are disputed material facts. *See id.*

In the instant case, the parties did not deny the existence of the written Arbitration Agreement, they differed over which claims fell within the scope of the Agreement. Arbitration is strongly favored under federal and state law. *Cantella & Co. v. Goodwin,* 924 S.W.2d 943, 944 (Tex.1996) (orig.proceeding); *Prudential Sec. Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex.1995) (orig.proceeding). Any doubts regarding the scope of an arbitration agreement should be resolved in favor of arbitration. *Cantella,* 924 S.W.2d at 944; *Merrill Lynch, Pierce, Fenner & Smith v. Eddings,* 838 S.W.2d 874, 880 (Tex.App.-Waco 1992, writ denied). Every reasonable presumption must be decided in favor of arbitration. *See Ikon,* 2 S.W.3d at 693.

## STANDARD OF REVIEW ON APPEAL

On appeal, we must determine whether the trial court's ruling as to the scope of the Arbitration Agreement was an abuse of discretion. *See Am. Employers' Ins. Co. v. Aiken,* 942 S.W.2d 156, 159 (Tex.App.-Fort Worth 1997, no writ). We must decide whether the trial court's ruling was arbitrary and unreasonable, that is, made without reference to any guiding rules or principles. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990); *Southwest Health Plan, Inc. v. Sparkman,* 921 S.W.2d 355, 357 (Tex.App.-Fort Worth 1996, no writ). The trial court's legal conclusions are reviewed by us *de novo. See Ikon,* 2 S.W.3d at 693.

Whether the Arbitration Agreement imposes a duty to arbitrate the claims in a particular dispute is a matter of contract interpretation. *See Am. Employers' Ins.,* 942 S.W.2d at 159; *BDO Seidman v. Miller,* 949 S.W.2d 858, 860 (Tex. App.-Austin 1997, writ dism'd w.o.j.) (op. on reh'g). Whether a contract is ambiguous is a question of law. *Columbia Gas*

*Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996). If there is no ambiguity, the construction of the written instrument is a question of law for the court. *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex.1968). Our primary goal in construing a written contract is to ascertain and give effect to the intent of the parties as expressed in the instrument. *See Balandran v. Safeco Ins. Co.,* 972 S.W.2d 738, 741 (Tex.1998); *Nat'l Union Fire Ins. Co. v. CBI Indus.,* 907 S.W.2d 517, 520 (Tex. 1995). If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Nat'l Union,* 907 S.W.2d at 520; *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983).

▮ An ambiguity does not arise simply because parties advance differing interpretations of the terms of a contract. *Columbia Gas,* 940 S.W.2d at 589; *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 134 (Tex.1994); *Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 727 (Tex.1981). For an ambiguity to exist, the language of the contract must remain uncertain or subject to two or more reasonable interpretations after applying the pertinent rules of construction. *Columbia Gas,* 940 S.W.2d at 589.

▮ In construing the Arbitration Agreement, we are to examine all parts of the document and the circumstances surrounding the formulation of the contract. *See id.; Nat'l Union,* 907 S.W.2d at 520; *Forbau,* 876 S.W.2d at 133. We must consider all of the provisions with reference to the entire Arbitration Agreement; no single provision will be controlling. *See Coker,* 650 S.W.2d at 393; *Cook Composites, Inc. v. Westlake Styrene Corp.,* 15 S.W.3d 124, 132 (Tex.App.-Houston [14th

Dist.] 2000, pet. dism'd). Only where a contract is determined to be ambiguous after application of the rules of construction may the courts consider parol evidence of the parties' interpretations. *Nat'l Union,* 907 S.W.2d at 520; *Sun Oil Co.,* 626 S.W.2d at 732. Where there is a broad arbitration clause, arbitration of a particular grievance should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Kline v. O'Quinn,* 874 S.W.2d 776, 782 (Tex.App.-Houston [14th Dist.] 1994, writ denied), *cert. denied,* 515 U.S. 1142, 115 S.Ct. 2579, 132 L.Ed.2d 829 (1995).

### DISCUSSION

▮ In three issues Appellants contend: the Arbitration Agreement is valid and binding and encompasses any dispute or matter upon which the trial court could subsequently rule at trial, including the claims made the basis of the prior interlocutory partial summary judgment (issues one and three); and the trial court erred in holding the Arbitration Agreement was invalid for the lack of signature of Osama's trial attorney (issue two).

We summarily overrule issue two because there is no indication in the record that the trial court's ruling was based upon the lack of signature of Osama's attorney on the Arbitration Agreement.

In response to issues one and three, Appellee Jamal asserts the trial court properly denied arbitration because there was no "meeting of the minds" inasmuch as the parties could not agree on the scope of the Agreement and Appellants offered no evidence regarding the Agreement.[8]

As mentioned earlier, the trial court determined the parties' signatures on the

---

**8.** Appellee Osama is proceeding pro se on appeal and has not filed an appellee's brief.

Arbitration Agreement were authentic. Appellants were not required to offer additional evidence in order for the trial court to make a ruling regarding the validity of the Agreement. *See Jack B. Anglin Co.,* 842 S.W.2d at 269. Applying contract construction principles, we must review the entire Arbitration Agreement to determine whether it is so worded that it can be given a certain or definite legal meaning or interpretation. *See Coker,* 650 S.W.2d at 393. An examination of the document reveals:

- "[the parties] agree to submit *all claims and disputes among them* to arbitration . . . ." [Emphasis added.]
- "The Parties agree to arbitrate *all existing issues among them in the above mentioned Cause Numbers* in the appropriate District Court, which includes the Divorce Case, the child custody of the [sic] Noor Qaddura and Farah Qaddura, the determination of each party's responsibilities and duties according to the Islamic rules of law . . . ." [Emphasis added.]
- The Arbitration Agreement *lists with specificity the exact cause numbers,* case styles, and names of the trial courts in which the three causes that are subject to the Agreement are pending.
- The document states that the parties agree the ruling of the arbitration panel is "Binding, and Final, and no party will take any appeal or future legal action of any matter afterwards."
- The Arbitration Agreement concludes with the recitation that each party will cause the above cause numbers to be abated pending the decision of the arbitrators, and will ask the courts to refer the cases for arbitration within seven days from the establishment of the panel of arbitrators. Further, "[t]he assignment must include **ALL**

cases, including those filed against or on behalf of other family members related to the parties."

The Arbitration Agreement does not contain any language purporting to except the applicability of the Agreement to certain issues, causes of action, or claims between the parties.

Jamal asserts that the issues disposed of by the partial summary judgment were no longer "existing issues" at the time the Arbitration Agreement was signed; therefore, the Agreement does not encompass these matters. A summary judgment that does not dispose of all parties and issues in the pending suit is interlocutory and not appealable unless a severance of that phase of the case is ordered by the trial court. *City of Beaumont v. Guillory,* 751 S.W.2d 491, 492 (Tex.1988). It is proper for a trial court to reconsider and reverse its prior interlocutory ruling on a partial summary judgment. *Elder Const., Inc. v. City of Colleyville,* 839 S.W.2d 91, 92 (Tex.1992), citing *Cunningham v. Eastham,* 465 S.W.2d 189, 192 (Tex.Civ.App.-Houston [1st Dist.] 1971, writ ref'd n.r.e.). Accordingly, the partial summary judgment in this case was interlocutory and subject to being reconsidered and set aside by the trial court. The trial court could elect to re-examine the evidence on which the partial summary judgment was based and could subsequently conclude that it does not support the judgment. *See Cunningham,* 465 S.W.2d at 192. Therefore, the issues addressed in the partial summary judgment were not finally disposed of and remained pending between the parties at the time the Arbitration Agreement was signed.

Additionally, an examination of the circumstances surrounding the formation of the Arbitration Agreement reveals that although the partial summary judgment had

been granted on several issues,[9] the parties' pleadings still sought considerable relief:

### The divorce case:

*Rola and Jamal:* Each wants to be appointed sole managing conservator of the two children, with the possessory conservator ordered to pay child support. Each requests the court divide the parties' community property—Rola seeks a disproportionate share for herself, Jamal states he wants a just and right distribution. Rola wants Jamal to pay her attorney's fees.

In his counterclaim, Jamal alleges a separate cause of action against Rola for "defamation and false light," in which he seeks $250,000 actual damages and $1,000,000 exemplary damages.

*Rola and Osama:* Rola seeks reimbursement for all community funds tendered to Osama by Jamal, whether in the form of a business or in community assets or in cash.

In his counterclaim, Osama seeks attorney's fees from Rola or from the community estate of Rola and Jamal.

### The protective order case:

Jamal filed an application for a protective order pursuant to section 81.001 of the Texas Family Code, seeking to protect his two children from their maternal grandparents. *See* TEX. FAM.CODE ANN. § 81.001 (Vernon 2002). The court master held a hearing on the application and denied it on February 27, 2002; Jamal was ordered to pay the grandparents' attorney $3,350 in attorney's fees. The next day, Jamal filed a notice of appeal from the master's recommendation. The record before us does not contain any further orders or judgments in this case.

As evidenced by a review of the issues that have yet to be addressed by the trial court in these two cases, the parties still had much to resolve on the date the Arbitration Agreement was signed.

Applying the pertinent rules of contract construction, we conclude the Arbitration Agreement is worded so that it can be given only one certain or definite legal meaning or interpretation, and it is therefore not ambiguous. We hold that as a matter of law the plain language of the Arbitration Agreement expresses the intent of the parties that the scope of the Agreement include all claims raised by the parties' pleadings in the two cases before us up until September 25, 2002, the date the Agreement was signed by the parties. The scope of the Arbitration Agreement therefore includes all claims and matters previously ruled upon by the trial judge in the partial summary judgment. Accordingly, we hold that the trial court abused its discretion in finding the Arbitration Agreement to be invalid and in denying Appellants' motions to stay litigation and compel arbitration under the Texas General Arbitration Act. We sustain Appellants' first and third issues.

### CONCLUSION

We reverse the trial court's orders denying Appellants' motions to stay litigation and to compel arbitration in these two consolidated cases. We render judgment that the Arbitration Agreement signed by the parties is valid and enforceable and covers all disputes between the parties that arose prior to the date the parties signed the Arbitration Agreement, includ-

---

9. The court held the Islamic Marriage Certificate was unenforceable, the house on Gladstone Drive is the separate property of Jamal, the house on Vesta Via Court belongs to Osama, and two certificates of deposit were never the community property of Rola and Jamal and belong solely to Osama.

ing all matters that were the subject of the partial summary judgment previously granted by the trial court.