COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-159-CV

 

 

IN THE INTEREST OF N.Q. AND F.Q., CHILDREN

 

                                                       ------------

 

              FROM
THE 322ND DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

I. 
INTRODUCTION

Appellant
Rola Jabri appeals the trial court=s
order relating to possession of and access to her two children, N.Q. and
F.Q.  Because we hold that the trial
court did not abuse its discretion in making its custody decisions, we affirm.

II. 
BACKGROUND








Jabri
and the children=s father, Jamal Qaddura,
were married on September 3, 1993.  Six
years later, Jabri filed for divorce. 
The parties subsequently signed an arbitration agreement in which they
agreed to submit their dispute to arbitration by the Texas Islamic Court.  Jabri filed a motion to compel arbitration,
which the trial court denied.  We
previously considered her appeal of this denial, reversed the trial court=s
order, and rendered judgment that the arbitration agreement was valid and
enforceable.  Jabri v. Qaddura,
108 S.W.3d 404, 413B14 (Tex. App.CFort
Worth 2003, no pet.).

Qaddura
then filed a motion to set aside the arbitration agreement on February 10,
2004, which the trial court granted. 
Jabri sought mandamus relief from this court, which we denied because
she had an adequate remedy by appeal.  In
re Qaddura, No. 02-04-00069-CV, 2004 WL 541052, at *1  (Tex. App.CFort
Worth Mar. 12, 2004, orig. proceeding) (mem. op.).[2]   Jabri did not appeal the trial court=s
order setting aside the arbitration agreement, and the trial court signed a
final decree of divorce on June 22, 2004.

In
the divorce decree, Jabri was ordered to pay Qaddura $590 per month in child
support.  She missed several payments,
however, and at a January 20, 2006 enforcement hearing, the associate judge
confirmed an arrearage of $5,000 and ordered Jabri to pay a total of $3,000 in
attorney=s
fees to Qaddura=s attorneys and to the
office of the attorney general.








Approximately
a year and a half later, on August 28, 2007, the trial court ordered Jabri=s
access to her children suspended until she posted a $2,500 cash bond with the
district clerk.  Jabri posted the bond in
either late May or early June 2008.  She
then filed a petition to modify the custody provisions of the divorce decree on
June 30, 2008, requesting the court to name her the sole managing conservator
of the children and to appoint her the temporary conservator with the right to
designate the primary residence of the children. In an order dated April 28,
2009, the trial court denied Jabri=s
motion to modify, found that the motion had been made in bad faith, entered
judgment against Jabri for $4,600 in attorney=s
fees, and again ordered Jabri to pay the $3,000 in attorney=s
fees that had been previously assessed against her in the January 2006 contempt
proceeding but remained unpaid.  In the
same order, the trial court also found that Jabri=s
$2,500 bond was forfeited and ordered Jabri=s
access to her children suspended until the posting of a $5,000 cash bond.  Jabri now appeals.

III. 
LAW AND APPLICATION TO FACTS

A.     The
Arbitration Agreement








Jabri
complains in her first of four issues that the trial court abused its
discretion by revoking the arbitration agreement.  We previously held in Jabri v. Qaddura
that the arbitration agreement was valid and enforceable and that it covered
all disputes between the parties that arose prior to the date the parties
signed it.  108 S.W.3d at 413.  Despite this holding, the trial court
subsequently granted Qaddura=s
motion to set aside the arbitration agreement on February 25, 2004, declaring
that the agreement was Avoid and of no force or
effect@ and
setting the case for trial.  Jabri
challenged this ruling by filing a petition for writ of mandamus in the
appellate court, which we denied.  Jabri
did not file a motion for rehearing.








In
our opinion denying mandamus relief, we specifically stated that Jabri had an
adequate remedy by interlocutory appeal. 
In re Qaddura, 2004 WL 541052, at *1; see Tex. Civ. Prac.
& Rem. Code Ann. ' 171.098(a)(2) (Vernon
2005) (authorizing interlocutory appeal of an order granting an application to
stay arbitration).[3]  Despite this specific statement in our
opinion of the availability of an interlocutory appeal to address Jabri=s
complaint, Jabri did not file a notice of appeal.  Instead, the case proceeded to trial, and the
trial court signed its final decree of divorce on June 22, 2004.  The divorce decree named Jabri possessory
conservator of the children and established her child support obligation at
$590 per month.  Jabri did not file a
notice of appeal from this final divorce decree.  Nearly five years passed from trial and final
judgment until Jabri filed a notice of appeal that raised her complaint about the
trial court=s
refusal to arbitrate.

Generally,
a complaint must be raised in the trial court to preserve the issue for
appeal.  See Tex. R. App. P.
33.1(a).  Further, the complaint must be
sufficiently specific to make the trial court aware of the complaint, unless
the specific grounds were apparent from the context.  Tex. R. App. P. 33.1(a)(1)(A).  The record before us does not reveal that
Jabri continued to urge her objection in the trial court to the order staying
arbitration after she declined to challenge the order by interlocutory appeal
and proceeded to trial on the merits.  It
does, however, reveal Jabri=s
activities in the trial court after the final divorce decree was signed:  she filed two petitions to modify the custody
arrangement; she signed a rule 11 agreement agreeing to abide by
recommendations in an associate judge=s
report; and she participated in hearings, including questioning witnesses and
arguing before the trial court.








Notably,
Jabri argued extensively in the trial court for a modification to the custody
provisions in the divorce decree, but it was only after she was unsuccessful on
her motionsCnearly
five years after the final divorce decree was signedCthat
she appealed the trial court=s
refusal to send the case to arbitration. 
She cannot affirmatively request the trial court to take action on her
motions to modify the divorce decree and now complain on appeal that the trial
court erred by complying with her request. 
See Tittizer v. Union Gas Corp., 171 S.W.3d 857, 862 (Tex.
2005) (stating general rule that a party cannot complain on appeal that the
trial court took a specific action that the complaining party requested).  Given Jabri=s
failure to appeal the trial court=s
granting the motion to set aside the arbitration agreementCnot
just once, after the court=s
ruling on the motion, but twice, after the entry of the final divorce decreeCand
given her postjudgment activities in the trial court that are inconsistent with
her complaint on appeal, we cannot conclude that her stated intention to
enforce the arbitration agreement remained fairly before the trial court or was
apparent from the context.  See Tex.
R. App. P. 33.1(a).  Therefore, we hold
that Jabri has failed to preserve her challenge to the trial court=s revoking
the arbitration agreement.  See id.  We overrule Jabri=s
first issue.

Jabri
argues in her fourth issue that the trial court judge had a Apersonal
vendetta@
because of the religious nature of the arbitration agreement, which submitted
the parties=
claims to arbitration by the Texas Islamic Court.  She also claims that the judge prevented her
from exercising her religion.  She points
to no evidence in the record, however, that the trial court judge=s
decision to set aside the arbitration agreement was in any way motivated by an
improper bias against her religion.








An
appellate court is not required to search the appellate record, with no
guidance from the briefing party, to determine if the record supports the party=s
argument.  Hall v. Stephenson, 919
S.W.2d 454, 466B67 (Tex. App.CFort
Worth 1996, writ denied).  Also, Awe
know of no authority obligating us to become advocates for a particular
litigant through performing their research and developing their argument for
them.@  Tello v. Bank One, N.A., 218 S.W.3d
109, 116 (Tex. App.CHouston [14th Dist.] 2007,
no pet.) (internal quotation omitted). 
Thus, an inadequately briefed issue may be waived on appeal.[4]  Hall, 919 S.W.2d at 467; see also Tex.
R. App. P. 38.1(i); Fredonia State Bank v. Gen. Am. Life Ins. Co., 881
S.W.2d 279, 284B85 (Tex. 1994) (discussing Along-standing
rule@
that point may be waived due to inadequate briefing). Because Jabri has not
supported her contentions that the trial court judge was motivated by a Apersonal
vendetta@ or
a bias against her religion with any evidence from the record, we overrule her
fourth issue.

B.     Jabri=s
First Amendment Rights and Right to a Fair Trial








In
her second issue, Jabri complains that the trial court abused its discretion by
denying her constitutional rights under the First Amendment and her right to a
fair trial.  At the January 20, 2006
enforcement hearing, Jabri was charged with contempt for multiple instances of
failure to pay child support, and she pleaded guilty to the charges.  The associate judge sentenced her to 180 days=
confinement per violation but placed her on community supervision and suspended
commitment.  One of Jabri=s
conditions of community supervision was to refrain from communicating with the
DallasBFort
Worth area mosque except through counsel. 
Jabri argues that this condition violated her First Amendment right to
exercise her religion.  She further
argues that the trial court was biased against her due to a Apolitical
connection@
with Qaddura and that the trial court=s
bias and Apattern
of abuse and partiality@ deprived her of a fair
trial.








First,
Jabri=s
claimed deprivation of her First Amendment rights allegedly occurred during the
contempt proceedings, which cannot be challenged on appeal.  A contempt order is not a final, appealable
judgment, and an appellate court has no jurisdiction over such an order.  See Norman v. Norman, 692 S.W.2d 655,
655 (Tex. 1985).  A contempt judgment may
be attacked by a petition for writ of habeas corpus (if the contemnor is
confined) or a petition for writ of mandamus (if no confinement is involved).  See Cadle Co. v. Lobingier, 50 S.W.3d
662, 671 (Tex. App.CFort Worth 2001, pet.
denied) (en banc). However, because a contempt order is not a final judgment,
there is no remedy by appeal.  In re
Office of the Att=y Gen. of Tex.,
215 S.W.3d 913, 916 (Tex. App.CFort
Worth 2007, orig. proceeding) (citing  Lehmann v. Har‑Con Corp., 39 S.W.3d
191, 195 (Tex. 2001)).  Therefore, we
have no jurisdiction to address this portion of Jabri=s
second issue.[5]

Next,
as for Jabri=s
complaint of bias in the overall proceedings, she again points to no evidence
in the record of any political connection between the trial court and Qaddura
or any other evidence that the trial court was not impartial, other than the
fact that the trial court ruled against her. 
Further, she did not raise the issue of bias in the trial court.  The impartiality of a judge may be challenged
in the trial court by a motion to recuse. 
See Tex. R. Civ. P. 18a, 18b. 
Even assuming that a basis for recusal may have existed, it cannot be
raised for the first time on appeal.  See
McElwee v. McElwee, 911 S.W.2d 182, 186 (Tex. App.CHouston
[1st Dist.] 1995, writ denied).  Jabri
did not file a motion to recuse or otherwise raise her claim of bias to the
trial court.  Because this portion of her
issue raises a complaint that she did not present to the trial court, she has
failed to preserve error.  See Tex.
R. App. P. 33.1(a).  We overrule the
remainder of Jabri=s second issue.

C.     Child
Custody and Support

1.      Petition
to Modify








In
her third issue, Jabri asserts that the trial court endangered the well-being
of the children and undermined the parentBchild
relationship.  Specifically, she
complains of the trial court=s
denial of her petition to modify the custody provisions of the divorce
decree.  In her petition, she requested
that the court name her the sole managing conservator of the children and
appoint her the temporary conservator with the right to designate the primary
residence of the children.  The trial
court=s
most recent order relating to possession of and access to the children before
Jabri filed her motion to modify was the trial court=s
August 28, 2007 order that suspended Jabri=s
access to her children until she posted a $2,500 cash bond.  Jabri filed her petition to modify on June
30, 2008.








If a
suit seeking to modify the designation of the person having the exclusive right
to designate the primary residence of a child is filed not later than one year
after the rendition of an order relating to possession and access, the person
filing the suit must provide a supporting affidavit.  Tex. Fam. Code Ann. ' 156.102(a)
(Vernon Supp. 2009).[6]  Jabri does not dispute that she did not
execute the required affidavit. 
Accordingly, the trial court did not err by denying her petition to
modify.  See id. ' 156.102(c).

2.      Writ
of Attachment

Jabri
also complains in her third issue that the trial court erred by granting a writ
of attachment for N.Q. and by failing to bring N.Q. before the court for an
interview.  Qaddura filed a motion for
enforcement on August 1, 2008, alleging that Jabri had violated the possession
order by failing to return N.Q. at the end of her summer visitation.  The trial court judge ordered the issuance of
a writ of attachment the same day and set a hearing for August 15, 2008, to
determine the right to possession of the children. Thus, this writ of
attachment awarding possession of the child to Qaddura pending the August 15
custody hearing was a temporary order and, as such, is not appealable.  See id. '
105.001(e); In re J.W.L., 291 S.W.3d 79, 83 (Tex. App.CFort
Worth 2009, orig. proceeding) (ATemporary
orders entered in family law cases are not appealable.@); see
also Tex. Civ. Prac. & Rem. Code Ann. '
51.014(a)(7) (Vernon 2008) (listing types of appealable interlocutory orders).








The
associate judge heard Qaddura=s
motion for enforcement on August 22, 2008, but it was truncated by the parties=
agreement to continue the case to January 2009. 
The associate judge signed a report on enforcement that gave Jabri
supervised visitation, forfeited her $2,500 bond, and sent the children to
counseling.  Under the associate judge=s
signature is written, AAgreed after partial hearing
w/o waiving future testimony.@  Attached to the report is a handwritten
document, signed by Jabri, Qaddura, and their respective attorneys, that
states, AThe
parties agree to this AJ=s report as a rule 11
between the parties.  The case shall be
reset in Jan. 2009.  No contempt
determination at this time.@  The parties appeared before the associate
judge on January 23, 2009, but the case was reset to March 31 due to the
withdrawal of Jabri=s attorney.








Jabri
argues that these actions in the August 22, 2008 and January 23, 2009
proceedings were abuses of the trial court=s
discretion.  She agreed to the
recommendations in the associate judge=s
August 22, 2008 report, however, so she cannot complain of these on
appeal.  See Tex. R. App. P.
33.1(a); see also Gomez de Hernandez v. Bridgestone/Firestone N. Am. Tire,
L.L.C., 204 S.W.3d 473, 481 (Tex. App.CCorpus
Christi 2006, pet. denied) (holding that, even if the trial court erred by
setting a hearing date too close to trial, appellant could not complain when
the parties had enforceable rule 11 agreements resetting the hearing and trial
dates and appellant did not object in the trial court to the hearing date that
was set in accordance with the rule 11 agreements); Blackburn v. Dobbs,
258 S.W.2d 432, 433 (Tex. Civ. App.CAmarillo
1953, writ dism=d) (providing that a rule 11
agreement is binding on appellant, Awho must
not now be heard to complain about the matter@); Ingram
v. Ingram, 249 S.W.2d 86, 89 (Tex. Civ. App.CGalveston
1952, no writ) (concluding that a litigant on appeal may not seek a reversal
for error that he himself has committed or invited).  Furthermore, we do not agree that the judge
acted arbitrarily or unreasonably when he reset the hearing due to the
withdrawal of Jabri=s attorney; thus, we hold
that the judge=s
order was not an abuse of discretion.  See
Low v. Henry, 221 S.W.3d 609, 614 (Tex. 2007); Cire v. Cummings, 134
S.W.3d 835, 838B39 (Tex. 2004).

3.      Security
Bond

A
court may order a person who has a possessory interest in a child to execute a
bond or deposit security if the court finds that the person may violate the
court order relating to the interest. 
Tex. Fam. Code Ann. '
153.011 (Vernon 2008).  Jabri claims in
her third issue that the trial court abused its discretion by requiring her to
post a $5,000 cash bond.  However, an
abuse of discretion does not occur as long as some evidence of substantive and
probative character exists to support the trial court=s
decision.  Butnaru v. Ford Motor Co.,
84 S.W.3d 198, 211 (Tex. 2002).  When the
trial court serves as factfinder, it weighs the evidence and judges a witness=s
credibility, and it may accept or reject any witness=s
testimony in whole or in part.  See
In re Rhodes, 293 S.W.3d 342, 344 (Tex. App.CFort
Worth 2009, orig. proceeding); see also In re R.D.S., 902 S.W.2d 714,
716 (Tex. App.CAmarillo
1995, no writ)  (AThe
appellate court must recall that the trier of fact has the authority to weigh
the evidence, draw reasonable inferences therefrom, and choose between
conflicting inferences.@).








The
trial court heard evidence at the March 31, 2009 hearing that Jabri had not
returned one of the children at the close of her summer visitation in 2008,
which necessitated the writ of attachment. 
Qaddura testified that Jabri had told the children=s
counselor and their school that the rule 11 agreement, which included
supervised visitation procedures for Jabri, was Anot
enforceable@ and
that she had Aevery
right to go back on it.@  Additionally, Qaddura testified that Jabri
had asserted that an order signed in 2004 was the only custody order in place,
and she had attempted to follow the visitation schedule under that prior order.  Jabri did not present any controverting
testimony at the hearing.  Accordingly,
we hold that the trial court did not abuse its discretion by requiring Jabri to
post a bond before exercising her visitation rights.  See Low, 221 S.W.3d at 614; Cire,
134 S.W.3d at 838B39.  We overrule Jabri=s
third issue. 

IV. 
CONCLUSION

Having
dismissed or overruled all of Jabri=s
issues on appeal, we affirm the trial court=s
order.

 

BOB MCCOY

JUSTICE

 

PANEL:
GARDNER, WALKER, and MCCOY, JJ.

 

WALKER,
J. concurs without opinion.

 

DELIVERED:
July 15, 2010











[1]See Tex. R. App. P.
47.4.





[2]On our own motion, we
take judicial notice of our record in In re Qaddura.  See Tex. R. Evid. 201; In re Y.M.A.,
111 S.W.3d 790, 792 (Tex. App.CFort Worth 2003, no
pet.) (holding that an appellate court may take judicial notice of its own
records in an earlier mandamus proceeding). 
We have obtained the history of this 2004 original proceeding from the
clerk=s record and file in
that case.





[3]A trial court may
stay an arbitration commenced or threatened on application and a showing that
there is not an agreement to arbitrate. 
Tex. Civ. Prac. & Rem. Code Ann. ' 171.023(a). 
Qaddura=s motion to set aside
the arbitration agreement requested the trial court to set aside or void the
agreement and set the case for trial because Jabri had waived the agreement and
because the agreement had become unworkable in light of events occurring after
our decision in Jabri v. Qaddura. 
The trial court granted this motion, declaring the arbitration agreement
Avoid and of no force
or effect@ and setting the case
for trial.  Accordingly, by declaring the
arbitration agreement void, the trial court effectively held that the parties
no longer had an agreement to arbitrate and therefore stayed arbitration under
section 171.023(a).  See id.





[4]We notified Jabri by
letter on September 29, 2009, that her brief did not comply with several rules
of appellate procedure, including rule 38.1(i), and requested that she file an
amended brief in compliance with the rules. 
In the letter, we notified her that failure to do so could result in
waiver of noncomplying points on appeal. 
Jabri filed an amended brief on October 12, 2009, but it again did not
comply with rule 38.1(i).  Therefore, we
issued a written order on October 26, 2009, directing Jabri to file a second
amended brief that complied with rule 38.1(i) within ten days.  In the order, we again informed her that
failure to file a brief that complied with the appellate rules could result in
the waiver of noncomplying points.  Jabri
then filed her second amended brief, and it is this brief upon which the case
was submitted.





[5]For the same reason,
we do not address Jabri=s complaint on appeal
regarding the $3,000 in attorney=s fees that she was ordered to pay in these
contempt proceedings (and reordered to pay in the trial court=s April 28, 2009
order).





[6]The affidavit must
contain, along with supporting facts, at least one of the following
allegations:

 

(1)
that the child=s present environment
may endanger the child=s physical health or
significantly impair the child=s emotional
development;

(2)
that the person who has the exclusive right to designate the primary residence
of the child is the person seeking or consenting to the modification and the
modification is in the best interest of the child; or

(3)
that the person who has the exclusive right to designate the primary residence
of the child has voluntarily relinquished the primary care and possession of
the child for at least six months and the modification is in the best interest
of the child.

 

Id. ' 156.102(b).