

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-09-159-CV**

IN THE INTEREST OF N.Q. AND F.Q., CHILDREN

------------

FROM THE 322ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  INTRODUCTION

Appellant Rola Jabri appeals the trial court's order relating to possession of and access to her two children, N.Q. and F.Q.  Because we hold that the trial court did not abuse its discretion in making its custody decisions, we affirm.

### II.  BACKGROUND

Jabri and the children's father, Jamal Qaddura, were married on September 3, 1993.  Six years later, Jabri filed for divorce.  The parties subsequently signed an arbitration agreement in which they agreed to submit their dispute to arbitration by

---

[1] *See* Tex. R. App. P. 47.4.

the Texas Islamic Court. Jabri filed a motion to compel arbitration, which the trial court denied. We previously considered her appeal of this denial, reversed the trial court's order, and rendered judgment that the arbitration agreement was valid and enforceable. *Jabri v. Qaddura*, 108 S.W.3d 404, 413–14 (Tex. App.—Fort Worth 2003, no pet.).

Qaddura then filed a motion to set aside the arbitration agreement on February 10, 2004, which the trial court granted. Jabri sought mandamus relief from this court, which we denied because she had an adequate remedy by appeal. *In re Qaddura*, No. 02-04-00069-CV, 2004 WL 541052, at *1 (Tex. App.—Fort Worth Mar. 12, 2004, orig. proceeding) (mem. op.).[2] Jabri did not appeal the trial court's order setting aside the arbitration agreement, and the trial court signed a final decree of divorce on June 22, 2004.

In the divorce decree, Jabri was ordered to pay Qaddura $590 per month in child support. She missed several payments, however, and at a January 20, 2006 enforcement hearing, the associate judge confirmed an arrearage of $5,000 and ordered Jabri to pay a total of $3,000 in attorney's fees to Qaddura's attorneys and to the office of the attorney general.

---

[2] On our own motion, we take judicial notice of our record in *In re Qaddura*. *See* Tex. R. Evid. 201; *In re Y.M.A.*, 111 S.W.3d 790, 792 (Tex. App.—Fort Worth 2003, no pet.) (holding that an appellate court may take judicial notice of its own records in an earlier mandamus proceeding). We have obtained the history of this 2004 original proceeding from the clerk's record and file in that case.

2

Approximately a year and a half later, on August 28, 2007, the trial court ordered Jabri's access to her children suspended until she posted a $2,500 cash bond with the district clerk. Jabri posted the bond in either late May or early June 2008. She then filed a petition to modify the custody provisions of the divorce decree on June 30, 2008, requesting the court to name her the sole managing conservator of the children and to appoint her the temporary conservator with the right to designate the primary residence of the children. In an order dated April 28, 2009, the trial court denied Jabri's motion to modify, found that the motion had been made in bad faith, entered judgment against Jabri for $4,600 in attorney's fees, and again ordered Jabri to pay the $3,000 in attorney's fees that had been previously assessed against her in the January 2006 contempt proceeding but remained unpaid. In the same order, the trial court also found that Jabri's $2,500 bond was forfeited and ordered Jabri's access to her children suspended until the posting of a $5,000 cash bond. Jabri now appeals.

### III. LAW AND APPLICATION TO FACTS

#### A. The Arbitration Agreement

Jabri complains in her first of four issues that the trial court abused its discretion by revoking the arbitration agreement. We previously held in *Jabri v. Qaddura* that the arbitration agreement was valid and enforceable and that it covered all disputes between the parties that arose prior to the date the parties signed it. 108 S.W.3d at 413. Despite this holding, the trial court subsequently

3

granted Qaddura's motion to set aside the arbitration agreement on February 25, 2004, declaring that the agreement was "void and of no force or effect" and setting the case for trial. Jabri challenged this ruling by filing a petition for writ of mandamus in the appellate court, which we denied. Jabri did not file a motion for rehearing.

In our opinion denying mandamus relief, we specifically stated that Jabri had an adequate remedy by interlocutory appeal. *In re Qaddura*, 2004 WL 541052, at *1; *see* Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(2) (Vernon 2005) (authorizing interlocutory appeal of an order granting an application to stay arbitration).[3] Despite this specific statement in our opinion of the availability of an interlocutory appeal to address Jabri's complaint, Jabri did not file a notice of appeal. Instead, the case proceeded to trial, and the trial court signed its final decree of divorce on June 22, 2004. The divorce decree named Jabri possessory conservator of the children and established her child support obligation at $590 per month. Jabri did not file a notice of appeal from this final divorce decree. Nearly five years passed

---

[3] A trial court may stay an arbitration commenced or threatened on application and a showing that there is not an agreement to arbitrate. Tex. Civ. Prac. & Rem. Code Ann. § 171.023(a). Qaddura's motion to set aside the arbitration agreement requested the trial court to set aside or void the agreement and set the case for trial because Jabri had waived the agreement and because the agreement had become unworkable in light of events occurring after our decision in *Jabri v. Qaddura*. The trial court granted this motion, declaring the arbitration agreement "void and of no force or effect" and setting the case for trial. Accordingly, by declaring the arbitration agreement void, the trial court effectively held that the parties no longer had an agreement to arbitrate and therefore stayed arbitration under section 171.023(a). *See id.*

from trial and final judgment until Jabri filed a notice of appeal that raised her complaint about the trial court's refusal to arbitrate.

Generally, a complaint must be raised in the trial court to preserve the issue for appeal. *See* Tex. R. App. P. 33.1(a). Further, the complaint must be sufficiently specific to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. Tex. R. App. P. 33.1(a)(1)(A). The record before us does not reveal that Jabri continued to urge her objection in the trial court to the order staying arbitration after she declined to challenge the order by interlocutory appeal and proceeded to trial on the merits. It does, however, reveal Jabri's activities in the trial court after the final divorce decree was signed: she filed two petitions to modify the custody arrangement; she signed a rule 11 agreement agreeing to abide by recommendations in an associate judge's report; and she participated in hearings, including questioning witnesses and arguing before the trial court.

Notably, Jabri argued extensively in the trial court for a modification to the custody provisions in the divorce decree, but it was only after she was unsuccessful on her motions—nearly five years after the final divorce decree was signed—that she appealed the trial court's refusal to send the case to arbitration. She cannot affirmatively request the trial court to take action on her motions to modify the divorce decree and now complain on appeal that the trial court erred by complying with her request. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005)

5

(stating general rule that a party cannot complain on appeal that the trial court took a specific action that the complaining party requested). Given Jabri's failure to appeal the trial court's granting the motion to set aside the arbitration agreement—not just once, after the court's ruling on the motion, but twice, after the entry of the final divorce decree—and given her postjudgment activities in the trial court that are inconsistent with her complaint on appeal, we cannot conclude that her stated intention to enforce the arbitration agreement remained fairly before the trial court or was apparent from the context. *See* Tex. R. App. P. 33.1(a). Therefore, we hold that Jabri has failed to preserve her challenge to the trial court's revoking the arbitration agreement. *See id.* We overrule Jabri's first issue.

Jabri argues in her fourth issue that the trial court judge had a "personal vendetta" because of the religious nature of the arbitration agreement, which submitted the parties' claims to arbitration by the Texas Islamic Court. She also claims that the judge prevented her from exercising her religion. She points to no evidence in the record, however, that the trial court judge's decision to set aside the arbitration agreement was in any way motivated by an improper bias against her religion.

An appellate court is not required to search the appellate record, with no guidance from the briefing party, to determine if the record supports the party's argument. *Hall v. Stephenson*, 919 S.W.2d 454, 466–67 (Tex. App.—Fort Worth 1996, writ denied). Also, "we know of no authority obligating us to become

6

advocates for a particular litigant through performing their research and developing their argument for them." *Tello v. Bank One, N.A.*, 218 S.W.3d 109, 116 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (internal quotation omitted). Thus, an inadequately briefed issue may be waived on appeal.[4] *Hall*, 919 S.W.2d at 467; *see also* Tex. R. App. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (discussing "long-standing rule" that point may be waived due to inadequate briefing). Because Jabri has not supported her contentions that the trial court judge was motivated by a "personal vendetta" or a bias against her religion with any evidence from the record, we overrule her fourth issue.

## B.    Jabri's First Amendment Rights and Right to a Fair Trial

In her second issue, Jabri complains that the trial court abused its discretion by denying her constitutional rights under the First Amendment and her right to a fair trial. At the January 20, 2006 enforcement hearing, Jabri was charged with contempt for multiple instances of failure to pay child support, and she pleaded guilty

---

[4] ... We notified Jabri by letter on September 29, 2009, that her brief did not comply with several rules of appellate procedure, including rule 38.1(i), and requested that she file an amended brief in compliance with the rules. In the letter, we notified her that failure to do so could result in waiver of noncomplying points on appeal. Jabri filed an amended brief on October 12, 2009, but it again did not comply with rule 38.1(i). Therefore, we issued a written order on October 26, 2009, directing Jabri to file a second amended brief that complied with rule 38.1(i) within ten days. In the order, we again informed her that failure to file a brief that complied with the appellate rules could result in the waiver of noncomplying points. Jabri then filed her second amended brief, and it is this brief upon which the case was submitted.

to the charges. The associate judge sentenced her to 180 days' confinement per violation but placed her on community supervision and suspended commitment. One of Jabri's conditions of community supervision was to refrain from communicating with the Dallas–Fort Worth area mosque except through counsel. Jabri argues that this condition violated her First Amendment right to exercise her religion. She further argues that the trial court was biased against her due to a "political connection" with Qaddura and that the trial court's bias and "pattern of abuse and partiality" deprived her of a fair trial.

First, Jabri's claimed deprivation of her First Amendment rights allegedly occurred during the contempt proceedings, which cannot be challenged on appeal. A contempt order is not a final, appealable judgment, and an appellate court has no jurisdiction over such an order. *See Norman v. Norman*, 692 S.W.2d 655, 655 (Tex. 1985). A contempt judgment may be attacked by a petition for writ of habeas corpus (if the contemnor is confined) or a petition for writ of mandamus (if no confinement is involved). *See Cadle Co. v. Lobingier*, 50 S.W.3d 662, 671 (Tex. App.—Fort Worth 2001, pet. denied) (en banc). However, because a contempt order is not a final judgment, there is no remedy by appeal. *In re Office of the Att'y Gen. of Tex.*, 215 S.W.3d 913, 916 (Tex. App.—Fort Worth 2007, orig. proceeding) (citing

*Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001)).  Therefore, we have no jurisdiction to address this portion of Jabri's second issue.[5]

Next, as for Jabri's complaint of bias in the overall proceedings, she again points to no evidence in the record of any political connection between the trial court and Qaddura or any other evidence that the trial court was not impartial, other than the fact that the trial court ruled against her.  Further, she did not raise the issue of bias in the trial court.  The impartiality of a judge may be challenged in the trial court by a motion to recuse.  *See* Tex. R. Civ. P. 18a, 18b.  Even assuming that a basis for recusal may have existed, it cannot be raised for the first time on appeal.  *See McElwee v. McElwee*, 911 S.W.2d 182, 186 (Tex. App.—Houston [1st Dist.] 1995, writ denied).  Jabri did not file a motion to recuse or otherwise raise her claim of bias to the trial court.  Because this portion of her issue raises a complaint that she did not present to the trial court, she has failed to preserve error.  *See* Tex. R. App. P. 33.1(a).  We overrule the remainder of Jabri's second issue.

### C.    Child Custody and Support

#### 1.    *Petition to Modify*

In her third issue, Jabri asserts that the trial court endangered the well-being of the children and undermined the parent–child relationship.  Specifically, she complains of the trial court's denial of her petition to modify the custody provisions

---

[5] For the same reason, we do not address Jabri's complaint on appeal regarding the $3,000 in attorney's fees that she was ordered to pay in these contempt proceedings (and reordered to pay in the trial court's April 28, 2009 order).

of the divorce decree. In her petition, she requested that the court name her the sole managing conservator of the children and appoint her the temporary conservator with the right to designate the primary residence of the children. The trial court's most recent order relating to possession of and access to the children before Jabri filed her motion to modify was the trial court's August 28, 2007 order that suspended Jabri's access to her children until she posted a $2,500 cash bond. Jabri filed her petition to modify on June 30, 2008.

If a suit seeking to modify the designation of the person having the exclusive right to designate the primary residence of a child is filed not later than one year after the rendition of an order relating to possession and access, the person filing the suit must provide a supporting affidavit. Tex. Fam. Code Ann. § 156.102(a) (Vernon Supp. 2009).[6] Jabri does not dispute that she did not execute the required affidavit.

---

[6] ... The affidavit must contain, along with supporting facts, at least one of the following allegations:

> (1) that the child's present environment may endanger the child's physical health or significantly impair the child's emotional development;
> (2) that the person who has the exclusive right to designate the primary residence of the child is the person seeking or consenting to the modification and the modification is in the best interest of the child; or
> (3) that the person who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession of the child for at least six months and the modification is in the best interest of the child.

*Id.* § 156.102(b).

10

Accordingly, the trial court did not err by denying her petition to modify. *See id.* § 156.102(c).

### 2. *Writ of Attachment*

Jabri also complains in her third issue that the trial court erred by granting a writ of attachment for N.Q. and by failing to bring N.Q. before the court for an interview. Qaddura filed a motion for enforcement on August 1, 2008, alleging that Jabri had violated the possession order by failing to return N.Q. at the end of her summer visitation. The trial court judge ordered the issuance of a writ of attachment the same day and set a hearing for August 15, 2008, to determine the right to possession of the children. Thus, this writ of attachment awarding possession of the child to Qaddura pending the August 15 custody hearing was a temporary order and, as such, is not appealable. *See id.* § 105.001(e); *In re J.W.L.*, 291 S.W.3d 79, 83 (Tex. App.—Fort Worth 2009, orig. proceeding) ("Temporary orders entered in family law cases are not appealable."); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon 2008) (listing types of appealable interlocutory orders).

The associate judge heard Qaddura's motion for enforcement on August 22, 2008, but it was truncated by the parties' agreement to continue the case to January 2009. The associate judge signed a report on enforcement that gave Jabri supervised visitation, forfeited her $2,500 bond, and sent the children to counseling. Under the associate judge's signature is written, "Agreed after partial hearing w/o waiving future testimony." Attached to the report is a handwritten document, signed

11

by Jabri, Qaddura, and their respective attorneys, that states, "The parties agree to this AJ's report as a rule 11 between the parties. The case shall be reset in Jan. 2009. No contempt determination at this time." The parties appeared before the associate judge on January 23, 2009, but the case was reset to March 31 due to the withdrawal of Jabri's attorney.

Jabri argues that these actions in the August 22, 2008 and January 23, 2009 proceedings were abuses of the trial court's discretion. She agreed to the recommendations in the associate judge's August 22, 2008 report, however, so she cannot complain of these on appeal. *See* Tex. R. App. P. 33.1(a); *see also Gomez de Hernandez v. Bridgestone/Firestone N. Am. Tire, L.L.C.*, 204 S.W.3d 473, 481 (Tex. App.—Corpus Christi 2006, pet. denied) (holding that, even if the trial court erred by setting a hearing date too close to trial, appellant could not complain when the parties had enforceable rule 11 agreements resetting the hearing and trial dates and appellant did not object in the trial court to the hearing date that was set in accordance with the rule 11 agreements); *Blackburn v. Dobbs*, 258 S.W.2d 432, 433 (Tex. Civ. App.—Amarillo 1953, writ dism'd) (providing that a rule 11 agreement is binding on appellant, "who must not now be heard to complain about the matter"); *Ingram v. Ingram*, 249 S.W.2d 86, 89 (Tex. Civ. App.—Galveston 1952, no writ) (concluding that a litigant on appeal may not seek a reversal for error that he himself has committed or invited). Furthermore, we do not agree that the judge acted arbitrarily or unreasonably when he reset the hearing due to the withdrawal of Jabri's

12

attorney; thus, we hold that the judge's order was not an abuse of discretion. *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

### 3. *Security Bond*

A court may order a person who has a possessory interest in a child to execute a bond or deposit security if the court finds that the person may violate the court order relating to the interest. Tex. Fam. Code Ann. § 153.011 (Vernon 2008). Jabri claims in her third issue that the trial court abused its discretion by requiring her to post a $5,000 cash bond. However, an abuse of discretion does not occur as long as some evidence of substantive and probative character exists to support the trial court's decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002). When the trial court serves as factfinder, it weighs the evidence and judges a witness's credibility, and it may accept or reject any witness's testimony in whole or in part. *See In re Rhodes*, 293 S.W.3d 342, 344 (Tex. App.—Fort Worth 2009, orig. proceeding); *see also In re R.D.S.,* 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ) ("The appellate court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences.").

The trial court heard evidence at the March 31, 2009 hearing that Jabri had not returned one of the children at the close of her summer visitation in 2008, which necessitated the writ of attachment. Qaddura testified that Jabri had told the

13

children's counselor and their school that the rule 11 agreement, which included supervised visitation procedures for Jabri, was "not enforceable" and that she had "every right to go back on it." Additionally, Qaddura testified that Jabri had asserted that an order signed in 2004 was the only custody order in place, and she had attempted to follow the visitation schedule under that prior order. Jabri did not present any controverting testimony at the hearing. Accordingly, we hold that the trial court did not abuse its discretion by requiring Jabri to post a bond before exercising her visitation rights. *See Low*, 221 S.W.3d at 614; *Cire*, 134 S.W.3d at 838–39. We overrule Jabri's third issue.

## IV. CONCLUSION

Having dismissed or overruled all of Jabri's issues on appeal, we affirm the trial court's order.

BOB MCCOY
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

WALKER, J. concurs without opinion.

DELIVERED: July 15, 2010

14