COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | |
| IHS ACQUISITION NO. 171, INC. | § | |
| d/b/a MESA HILLS SPECIALTY | § | |
| HOSPITAL, ENCORE HEALTHCARE, | § | No. 08-11-00195-CV |
| LLC, and LYRIC HEALTH CARE | | |
| HOLDINGS III, INC., | § | |
| | § | Appeal from |
| Appellants, | § | County Court at Law No. 5 |
| v. | § | of El Paso County, Texas |
| JOANN BEATTY-ORTIZ, | § | (TC # 2010-4254) |
| Appellee. | § | |

## **O P I N I O N**

IHS Acquisition No. 171, Inc. d/b/a Mesa Hills Specialty Hospital, Encore Healthcare, L.L.C., and Lyric Healthcare Holdings III, Inc., (collectively Appellants), file this interlocutory appeal challenging the trial court's denial of its motion to compel arbitration. Finding error, we reverse.

## **FACTUAL SUMMARY**

IHS Acquisitions No. 171, doing business as Mesa Hills Specialty Hospital, hired Joann Beatty-Ortiz (Beatty) in May 2000. On June 30, 2006, Beatty was promoted to Chief Executive Officer (CEO) where she remained until her termination on February 3, 2010.

On March 31, 2010, Beatty filed a complaint with the Texas Workforce Commission Civil Rights Division against "IHS Acquisitions #171 d/b/a Mesa Hills Specialty Hospital" alleging continuing gender discrimination from November 2008 until the date of her termination. She claimed constant harassment and belittlement from the Regional Director of Operations,

Paul Miller, and that she was not the only female subjected to Miller's demeaning behavior and double standards. Beatty further asserted that prior to her termination, she had not received a single disciplinary action warning that her job was in jeopardy or a negative performance evaluation. She was the only female CEO in her region and upon her termination, the position was filled by a man who was previously the director of environmental services.

On October 28, 2010, Beatty filed suit against Appellants, alleging essentially the same gender discrimination allegations contained in her Texas Workforce Commission Complaint against IHS. The only explanation she was given was that "the hospital was not going in the direction they wanted to." Beatty sought front and back pay benefits, compensatory damages, punitive damages, attorney's fees, costs, and prejudgment and post-judgment interest. Appellants collectively filed a motion to compel arbitration, attaching a copy of a document signed by Beatty on September 23, 2008.

## THE ARBITRATION AGREEMENT

The document, entitled "Mutual Arbitration Agreement" provides in relevant part:

IHS Acquisition *No. 174*, Inc. ('Employer') as an affiliate of Lyric Health Care Holdings, III, Inc. maintains an Employee Injury Benefit Plan (the 'Plan') to pay benefits to Participants due to injuries or illnesses incurred in the course and scope of employment with Company or affiliates of Company who adopt the Plan. The Plan pays defined: (i) disability wage replacement benefits; (ii) death benefits to Participant's beneficiaries; (iii) dismemberment/loss of use benefits; and (iv) medical benefits.

The Mutual Arbitration Agreement ('Agreement') binds Employer and Employee to arbitrate claims covered by this Agreement. The Effective Date of this Agreement is for employees currently employed by Employer, three (3) business days following the notice date of the Plan (through receipt of the Summary Plan Description) ('Notice Date'). The Notice Date is <u>August 8, 2008</u>. If an Employee is hired after the Notice Date, the Employee shall be provided a copy of the Summary Plan Description and this Agreement and will be bound by this Agreement and covered by the Plan.

## I. <u>ARBITRATION</u>

**(This is our agreement to binding arbitration.)**

The Employer and Employee each agree to binding arbitration of all claims and disputes described hereafter, whether these claims and disputes exist now or arise in the future. All claims subject to arbitration must be submitted to arbitration within one year of the date of the incident giving rise to the claim or is forever barred. The claims, disputes and allegations subject to binding arbitration under this Agreement include my claims involving Employer, as well as Employer's claims against me, for:

1. Employer's negligence, gross negligence, strict liability, intentional act, omission or any other claim or cause of action with respect to any employment-related death, injuries, trauma or illness;

2. tort claims (including, but not limited to, any claims for bodily injury or physical, mental or psychological injury) for injuries, trauma or illness I may sustain in the course and scope of my employment;

3. claims for wrongful termination, demotion, or discharge under statutory of common law, including retaliatory discharge claims related to workplace injuries, illnesses or trauma;

4. claims for a violation of any federal, state or other government law, statute, regulation or ordinance relating directly or indirectly to my workplace injury, illness or trauma; and

5. any and all claims challenging the validity or enforceability of this Agreement (in whole or in part) or challenging the applicability of this Agreement to a particular dispute or claim.

The appeal of a full or partial denial of benefits under the Plan is not covered by this Agreement.

**BY ARBITRATING THESE CLAIMS, EMPLOYER AND EMPLOYEE UNDERSTAND THAT FOR EACH PARTY ANY CAUSE OF ACTION DESCRIBED IN THIS AGREEMENT WILL BE SUBJECT TO RESOLUTION IN ARBITRATION ACCORDING TO THE PROCEDURES PROVIDED IN THIS AGREEMENT.**

## II. ARBITRATION PROCEDURES
**(This is how the arbitration will be conducted)**

.    .    .

## III. TERM

Employer may modify or terminate this Agreement at any time. Any such change shall be prospective only. No change, amendment, modification or termination shall affect the obligation of both parties to arbitrate, whether the request for arbitration was before or after any modification, amendment, or termination of this Agreement. The Agreement in place at the time of the occurrence of the arbitration event shall govern.

## THE MISNOMER

The agreement binds the "Employer," listed as IHS Acquisition *No. 174* as an affiliate of Lyric Health Care Holdings, III, Inc. But Beatty was employed by IHS Acquisition *No. 171,* filed her complaint against IHS Acquisition *No. 171*, and ultimately sued IHS Acquisition *No. 171.* While Appellants maintain the contract contains a simple scrivener's error, Beatty counters that because IHS does not claim to be the same entity as IHS Acquisition No. 174 and does not claim to be an alter ego of IHS Acquisition No. 174, IHS is not a party to the arbitration policy and cannot enforce it.

## STANDARD OF REVIEW

The parties do not dispute that the FAA applies to this proceeding. *See* 9 U.S.C.A. §§ 1-16 (West 2009). Section 51.016 of the Texas Civil Practice and Remedies Code permits the interlocutory appeal of an order denying a motion to compel arbitration under the Federal Arbitration Act. TEX.CIV.PRAC.&REM.CODE ANN. § 51.016 (West Supp. 2011). A trial court's determination regarding the validity of an agreement to arbitrate is a question of law which we review *de novo*. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). A trial court abuses its discretion when it refuses to compel arbitration pursuant to a valid and enforceable arbitration agreement. *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002)(orig. proceeding).

A party seeking to compel arbitration must first satisfy a two-pronged burden of proof: first, it must demonstrate the existence of a valid agreement to arbitrate the dispute, and second,

it must prove that the claims asserted are within the scope of the agreement. *In re Dillard Dept. Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006); *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605 (Tex. 2005)(orig. proceeding); *Budd v. Max International LLC*, 339 S.W.3d 915, 918 (Tex.App.--Dallas 2011, no pet.). If the party seeking arbitration carries its initial burden, then the burden shifts to the party opposite to present evidence of an affirmative defense. *Id*.

While a strong presumption favoring arbitration exists, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson, Inc.*, 128 S.W.3d at 227. In deciding whether a party has met its initial burden, we do not resolve doubts or indulge a presumption in favor of arbitration. *Id.* Rather, the party attempting to compel arbitration must show that the arbitration agreement meets all requisite contract requirements. *Id*. at 228. If the trial court determines that a valid agreement exists, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcement of the arbitration agreement. *Id*. at 227-28.

## APPLICABLE LAW

### *The Federal Arbitration Act (FAA)*

The FAA provides, in relevant part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*See* 9 U.S.C. § 2 (West 2009); *Rent-A-Center West, Inc. v. Jackson*, --- U.S.---, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010), *quoting Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The above provision has been described as reflecting both a "liberal federal policy favoring arbitration," and the "fundamental principle that arbitration is a matter of contract." *See AT&T Mobility LLC v. Conception*, ---

- 5 -

U.S. ---, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011) *citing Moses H. Cone Memorial Hospital*, 460 U.S. at 24, 103 S.Ct. at 927 *and Rent-A-Center*, --- U.S. at ---, 130 S.Ct. at 2776. "The FAA thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." *Rent-A-Center*, --- U.S. ---, 130 S.Ct. 2776 (internal citations omitted); *citing Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) *and Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

An agreement to arbitrate is a contract, the relation of the parties is contractual, and the rights and liabilities of the parties are controlled by the law of contracts. As such, a party cannot be required to submit to arbitration any dispute which she has not agreed to submit. *See AT&T Mobility LLC*, 131 S.Ct. at 1740 (arbitration is a creature of contract; a person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner which, he has agreed so to do). Because arbitration is based on a contractual relationship, a party who has not consented cannot not be forced to arbitrate a dispute. Since arbitration is generally a matter of contract, the FAA requires courts to honor parties' expectations. 9 U.S.C.A. § 1 *et seq.; AT&T Mobility LLC*, 131 S.Ct. at 1740.

### Texas Law - Formation of Contracts

When determining the validity of arbitration agreements that are subject to the FAA, we apply ordinary state law contract principles that govern the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006), *citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005). The party attempting to compel arbitration must

show that the arbitration agreement meets all requisite contract elements. *J.M. Davidson, Inc.*, 128 S.W.3d at 228. The following elements are required for the formation of a valid and binding contract: (1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the term; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex.App.--Dallas 2006, pet. denied). Like other contracts, an agreement to arbitrate must be supported by consideration. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 676; *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005)(*per curiam*).

### *Mutual Promises and Consideration*

Mutual, reciprocal promises which bind both parties may constitute consideration for a contract. *Texas Custom Pools, Inc. v. Clayton*, 293 S.W.3d 299, 309 (Tex.App.--El Paso 2009, no pet.). In the case of a stand-alone arbitration agreement, both sides are required to enter into binding promises to arbitrate. *In re AdvancePCS*, 172 S.W.3d at 607; *see also In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010)(mutual promises to submit a dispute to arbitration are sufficient consideration to support an arbitration agreement); *see also In re Halliburton Co.*, 80 S.W.3d at 569-70 *and J.M. Davidson, Inc.*, 128 S.W.3d at 228 (cases noting that when mutual promises to submit employment disputes to arbitration bind both parties to their promises to arbitrate, sufficient consideration exists to support an arbitration agreement between the employer and the at-will employee).

***Illusory Promises***

A promise which does not bind the promisor, as when the promisor retains the option to discontinue performance, is illusory. *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010), *citing Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex. 2009); *see also J.M. Davidson, Inc.*, 128 S.W.3d at 228; *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 645 (Tex. 1994)(employer's promises were illusory because they were dependent upon at-will employee's period of continued employment; thus, employer could avoid performance by terminating at-will employee's employment while the employee was bound to her promise whether or not she remained employed). Consequently, when a purported bilateral contract is supported only by illusory promises, there is no contract. *In re 24R, Inc.*, 324 S.W.3d at 567, *citing Vanegas v. American Energy Services*, 302 S.W.3d 299, 302 (Tex. 2009), *quoting Light*, 883 S.W.2d at 644-45.

However, where an employer cannot avoid its promise to arbitrate by amending a termination provision or terminating it altogether, the dispute resolution plan is not illusory. *See J.M. Davidson, Inc.*, 128 S.W.3d at 228; *In re Polymerica, LLC*, 296 S.W.3d 74, 76 (Tex. 2009); *see also In re Halliburton Co.*, 80 S.W.3d at 569-70 (when mutual promises to submit employment disputes to arbitration bind both parties to their promises to arbitrate, sufficient consideration exists to support an arbitration agreement between the employer and the at-will employee).

## ANALYSIS

Appellants bring two issues for review. In Issue One, they complain that the trial court erred in denying the motion to compel because pursuant to the contractual language, the arbitrator, not the trial court, should decide gateway issues of validity, enforceability, and

arbitrability. Alternatively, in Issue Two, Appellants suggest that even if the trial court had the authority to decide arbitrability, it abused its discretion in denying the motion to compel. The crux of the dispute is the misnomer. Appellants argue that this clerical error is itself a gateway issue and therefore must be arbitrated under the express terms of the Agreement. In contrast, Beatty focuses on two arguments: (1) a court should decide whether the Agreement is enforceable, not an arbitrator; and (2) no agreement exists between the parties because IHS is not the "Employer" referenced in the Agreement.

### Court Or Arbitrator?

When a dispute involving an agreement to arbitrate is brought to a court for resolution, it is the court's obligation to determine whether the parties agreed to submit a particular issue to arbitration. *See United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Del E. Webb Const. v. Richardson Hosp. Authority*, 823 F.2d 145 (5th Cir. 1987). An arbitration provision may give the arbitrator the power to resolve gateway issues regarding validity and enforceability of the arbitration agreement. In that event, the entire matter of arbitrability is transferred from the courts to the arbitrator. Unless the agreement clearly demonstrates that the parties intended to confer on the arbitrator the power to determine what disputes are arbitrable, the court retains the duty to decide that issue. Arbitration agreements that clearly and unmistakably show intent to assign gateway issues to the arbitrator are fully enforceable. *See Rent-A-Center*, -- U.S.--, 130 S.Ct. at 2777; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1985)(holding question of primary power to decide arbitrability "turns upon what the parties agreed about that matter"); *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986)(holding parties may agree to arbitrate arbitrability). Accordingly, under

*First Options*, gateway questions which are normally decided by a court will be submitted to an arbitrator where the agreement was clear and unmistakable. *See First Options*, 514 U.S. at 943; *AT&T Technologies, Inc.*, 475 U.S. at 649, 106 S.Ct. at 1418.

Here, the Agreement provided that "any and all claims challenging the validity or enforceability of this Agreement . . ." are subject to arbitration. It thus clearly and unmistakably provided for issues of validity and enforceability to go to the arbitrator. Beatty argues that whether the contract is supported by adequate consideration is not an issue of validity or enforceability but rather an issue of formation for the court to decide. We disagree. The Agreement bears Beatty's signature evidencing her assent to its terms and clearly provides for an arbitrator to decide all issues of arbitrability.

In *Rent-A-Center*, the Supreme Court clarified how courts must treat challenges to an arbitration agreement's delegation provision. *See Rent-A-Center* --- U.S. ----, 130 S.Ct. 2772.

> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.

*Id.* at 2775-76. According to the Supreme Court, the analysis in situations challenging a stand-alone arbitration agreement containing a delegation provision depends on the kind of challenge being made. *Id.* If the challenge relates to the arbitration agreement as a whole, and the agreement contains a provision delegating issues of arbitrability to the arbitrator, then the challenge must be directed to arbitration. *Id.* If the challenge is specific to the issue of delegation, however, then the court must resolve the challenge. *Id.*

The Agreement presented clearly and unmistakably provides that issues of validity and enforceability go to the arbitrator. Beatty signed the Agreement, manifesting her intent that gateway issues be arbitrated. Additionally, Beatty challenges the entire arbitration agreement

based on the assertion that the term provision renders the Agreement illusory. Under *Rent-A-Center*, because there is a specific delegation provision, and Beatty challenges the Agreement as a whole, rather than the specific delegation provision, the issue goes to the arbitrator. Therefore, the determination of whether the agreement is illusory is for the arbitrator and not the court.

### Effect of the Misnomer

We have already highlighted the misnomer in the Agreement. Beatty was employed by IHS Acquisition No. 17*1* d/b/a Mesa Hills Specialty Hospital but the Agreement defines "Employer" to mean "IHS Acquisition No. 17*4*. Beatty argues that the Appellants failed to demonstrate the existence of an arbitration agreement *between the parties*. A misnomer does not render an arbitration agreement unenforceable. *See Fogal v. Stature Construction, Inc.*, 294 S.W.3d 708, 716 (Tex.App.--Houston [1st Dist.] 2009, pet. denied). In *Fogal*, the arbitration clause was signed by the Fogals and Tremont Homes, and the entity named Stature Construction appeared at first to be a non-signatory to the arbitration agreement. *Fogal*, 294 S.W.3d at 717. However, evidence was produced showing that Stature Construction was doing business as "Tremont Custom Homes" (which was the entity that should have been listed on the earnest-money contract that referred to Tremont Homes). *Id*. Moreover, evidence showed that the deed for the house purchased by the Fogals reflected that Stature was the seller referred to in the earnest-money contract. *Id*. The Fogals did not dispute that Stature was the seller or that Stature was doing business as Tremont Custom Homes. Instead, the *Fogals* built their non-arbitration argument on the technical error mentioning "Tremont Homes" rather than "Tremont Custom Homes," and claimed that since there was not an assumed name certificate filed with the Texas Secretary of State, Stature could not enforce the arbitration agreement. *Id*. The Houston Court noted that:

> Because arbitration is contractual in nature, the FAA generally 'does not require parties to arbitrate when they have not agreed to do so.' Federal and Texas state courts have recognized, however, that " '[i]t does not follow . . . that under the [FAA] an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision'; instead, under certain circumstances, principles of contract law and agency may bind a non-signatory to an arbitration agreement."

*Id*., *citing Kellogg Brown & Root*, 166 S.W.3d at 738. Although that case dealt with whether or not an assumed named certificate was required, the Houston Court of Appeals ultimately held that Stature could enforce the arbitration agreement, despite the technical deficiencies. *Id*. at 717-18.

In construing an arbitration agreement, the court should attempt to give effect to the parties' intentions, in light of the usual and ordinary meaning of the contractual language and the circumstances under which the agreement was made. *See In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 210 (Tex. 2007)("Arbitration agreements are enforced according to their terms and according to the intentions of the parties.")(internal quotations and citations omitted). Here, the Agreement clearly evidences an intent for the "Employer" and "Employee" to mutually arbitrate a specific and detailed list of disputes. The parties' intent is ascertained by looking to the plain language of the agreement. Appellants not only presented the signed Agreement, it is undisputed that Beatty was employed by IHS 171 at the time the Agreement was signed. Beatty did not present evidence that she did not intend to enter into an Agreement with her Employer or that she was not employed by IHS 171 at the time she signed the Agreement. Nor does Beatty present any evidence that she ever worked for IHS 174.

To meet their burden, Appellants must demonstrate the existence of a valid agreement to arbitrate the claimed disputes. Although not always expressly stated, part of this requirement is that the Agreement be between the parties. Even though the Agreement provides that issues of

validity and enforceability must go to an arbitrator, Appellants still bear the burden of producing some evidence that they were either a party to the Agreement or otherwise had rights to enforce it. They presented an Agreement which is clearly between an Employer and Employee. Although the Agreement defines the Employer as IHS Acquisition 17*4*, Appellants also produced evidence that at the time the Agreement was signed, Beatty was employed by IHS Acquisitions 17*1* and that Beatty had never been employed by IHS 17*4*.

### Affirmative Defense

If the party seeking arbitration carries its initial burden, then the burden shifts to the party opposing arbitration to present evidence on an affirmative defense to the arbitration agreement. *J.M. Davidson, Inc*., 128 S.W.3d at 227. In the context of enforcement of an arbitration agreement, defenses refer to unconscionability, duress, fraudulent inducement, and revocation. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001). Because the law favors arbitration, the burden of proving a defense to arbitration is on the party opposing it. *See J.M. Davidson, Inc.*, 128 S.W.3d at 227.

Beatty has not offered evidence as to any of the applicable affirmative defenses. Her only claims related to issues of arbitrability which we have already determined must be presented to the arbitrator. We conclude that the trial court erred in refusing to compel arbitration. We sustain both issues for review and reverse and remand for orders compelling arbitration.


May 9, 2012

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.