In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-16-00095-CV
_____

**T.W. ODOM MANAGEMENT SERVICES, LTD., Appellant**

**V.**

**THOMAS WILLIFORD, Appellee**

**On Appeal from the 58th District Court**
**Jefferson County, Texas**
**Trial Cause No. A-197,693**

**MEMORANDUM OPINION**

T.W. Odom Management Services, Ltd., appeals from the trial court's order denying its motion to compel arbitration in a negligence suit brought against it by Thomas Williford. Williford's suit arises from injuries he allegedly suffered while working for T.W. Odom. In issue one, T.W. Odom complains that the trial court erred by deciding whether Williford's negligence claims fall within the scope of the parties' arbitration agreement when the agreement provides that the arbitrator should have decided the issue. In issue two, T.W. Odom argues that Williford's

1

claims are tort claims that fall within the scope of the parties' arbitration agreement. Because the arbitration agreement clearly and unmistakably shows that T.W. Odom and Williford intended to delegate gateway issues relating to the interpretation, applicability, or enforceability of the agreement to the arbitrator, we conclude that the trial court erred by deciding whether Williford's negligence claims fall within the scope of the parties' agreement. Accordingly, we reverse the trial court's order denying arbitration and remand to the trial court with instructions to enter an order granting T.W. Odom's motion to compel arbitration.

## Background

T.W. Odom is a non-subscriber to Texas's statutory workers' compensation insurance plan and an owner of several Waffle House restaurants. T.W. Odom established the T.W. Odom Management Services Workplace Injury Benefit Plan (the Plan), an occupational injury plan governed by the federal Employee Retirement Income Security Act of 1974 (ERISA), to provide non-subscriber compensation benefits to employees injured on the job. The Plan provides no-fault medical, disability, death, and dismemberment benefits to T.W. Odom's participating employees.

In March 2013, T.W. Odom hired Williford to work in its maintenance department. At that time, Williford became a participant under the Plan, and

2

Williford also signed an arbitration agreement as a condition of his employment. In January 2014, Williford was injured when he slipped and fell at work. Williford collected over $90,000 in non-subscriber compensation benefits under the Plan for medical expenses and lost wages. Although Williford's doctors cleared him to return to work in September 2015, Williford chose instead to file a negligence suit against T.W. Odom for the injuries he allegedly sustained on the job. Williford alleged that T.W. Odom was negligent in failing to keep its premises clean, provide a safe work place, provide adequate manpower for the work, provide adequate instructions and warnings to its employees, and properly schedule and manage the work. Williford sought traditional negligence damages, including loss of earnings and earning capacity, as well as past and future damages for medical expenses, physical pain, mental anguish, and physical impairment. In his suit, Williford does not claim that he was denied any non-subscriber compensation benefits under the Plan.

T.W. Odom filed a motion to compel arbitration. During the trial court's hearing on T.W. Odom's motion to compel, Williford objected to arbitration, arguing that his claims were not tort claims that were included in the parties' arbitration agreement, but were claims for non-subscriber compensation benefits that were specifically excluded from the arbitration agreement. Williford admitted

3

that he had signed a second arbitration agreement in September 2015, but he claimed that it was ineffective because he timely rejected the agreement. Williford's counsel argued that because Williford rejected the 2015 agreement, he was not bound to arbitrate his claims because the 2013 agreement also became ineffective. Williford's counsel argued in the alternative that if the trial court found the 2013 agreement remained effective despite Williford's rejection of the 2015 agreement, then the trial court should find that Williford's claims do not fall within the scope of the 2013 Agreement, because they are "negligence claim[s] on the back of a nonsubscriber claim[.]" According to Williford's counsel, Williford is seeking non-subscriber compensation in the form of lost wages, impairment, medical, and past and future pain and suffering.

During the hearing, T.W. Odom argued that Williford's negligence claims are tort claims that are within the scope of the parties' 2013 arbitration agreement and are not claims for non-subscriber compensation benefits under the Plan. T.W. Odom conceded that Williford had signed a second arbitration agreement in September 2015 before he was to return to work and that Williford had timely revoked his consent to the 2015 agreement, but T.W. Odom argued that Williford's revocation of the 2015 agreement did not release Williford from the 2013 agreement. According to T.W. Odom, the 2015 agreement states that if it does not

4

become effective, then the original 2013 agreement remains valid. T.W Odom argued that the 2013 agreement was the "relevant operative arbitration agreement[.]"

The trial court denied T.W. Odom's motion to compel arbitration. The trial court rejected Williford's argument that the 2013 arbitration agreement was no longer effective. The trial court found that the "genesis of the case is a nonsubscriber case[,]" and that Williford's tort was based on a non-subscriber injury. The trial court concluded that Williford's case was a non-subscriber case that is excluded from the 2013 arbitration agreement. T.W. Odom appealed the trial court's order denying its motion to compel.

## Standard of Review and Applicable Law

This is an appeal pursuant to section 51.016 of the Texas Civil Practice and Remedies Code, which authorizes interlocutory appeals of matters subject to the Federal Arbitration Act (FAA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (West 2015); *see also* 9 U.S.C.A § 16. A party attempting to compel arbitration under the FAA must establish that there is a valid arbitration agreement and show that the claims raised fall within the scope of that agreement. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding). There is a presumption favoring agreements to arbitrate under the FAA, but the presumption only arises after the

5

party seeking to compel arbitration proves that a valid arbitration agreement exists. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737-38 (Tex. 2005) (orig. proceeding). If the party seeking to compel arbitration proves that a valid arbitration agreement exists, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcement of the agreement. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

We review a trial court's denial of a motion to compel arbitration for an abuse of discretion. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). The trial court's determination of the arbitration agreement's validity is a question of law which we review *de novo*. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding); *J.M. Davidson, Inc.*, 128 S.W.3d at 227. In determining the validity of the arbitration agreement under the FAA, we generally apply state-law principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding). We may not expand upon the terms of the contract or tolerate a liberal interpretation of the contract by reading into it a voluntary agreement to arbitrate when one does not exist. *Aldridge v. Thrift Fin. Mktg., LLC*, 376 S.W.3d 877, 883 (Tex. App.—Fort Worth 2012, no pet.). The plain meaning of the contractual language must clearly indicate the intent to arbitrate. *Id.*

Once the party seeking to compel arbitration establishes that a valid agreement exists, the trial court must then determine whether the arbitration agreement covers the claims at issue. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). The determination of whether the arbitration agreement imposes a duty to arbitrate the claims in a particular dispute is a matter of contract interpretation. *Jabri v. Qaddura*, 108 S.W.3d 404, 410 (Tex. App.— Fort Worth 2003, no pet.). "If a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Id.* at 411. The court's primary concern in construing the contract is to ascertain the true intention of the parties as expressed in the contract. *J.M. Davidson, Inc.*, 128 S.W.3d at 229.

Analysis

In issue one, T.W. Odom complains that the trial court erred by deciding the parties' dispute over whether Williford's negligence claims are claims for non-subscriber compensation benefits that are excluded from the 2013 arbitration agreement. According to T.W. Odom, the arbitration agreement contains a delegation provision that delegates to the arbitrator the authority to decide disputes concerning the interpretation and applicability of the agreement. Alternatively, in issue two, T.W. Odom argues that even if the trial court had the authority to decide

7

the dispute, the trial court abused its discretion by denying its motion to compel because Williford's non-subscriber negligence claims are tort claims that fall within the scope of the arbitration agreement.

In determining whether the trial court abused its discretion by denying T.W. Odom's motion to compel, we review the trial court's interpretation of the parties' arbitration agreement *de novo*. *See Jabri*, 108 S.W.3d at 410. Applying contract construction principles, we must review the entire arbitration agreement to determine whether it is so worded that it can be given a certain legal interpretation. *See id.* at 412. If the agreement clearly demonstrates that the parties intended to confer on the arbitrator the power to determine what disputes are arbitrable, then the trial court's ruling as to the scope of the arbitration agreement was an abuse of discretion. *See generally id.* at 410.

When a dispute involving an arbitration agreement is brought to court for a resolution, it is the trial court's obligation to determine whether the parties agreed to submit a particular issue to arbitration. *IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*, 387 S.W.3d 799, 807 (Tex. App.—El Paso 2012, no pet.) (citing *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564 (1960)). "[A] delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010). Parties

8

can agree to arbitrate "'gateway'questions of 'arbitrability,'" such as whether an agreement covers a particular claim. *Id.*; *see also G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 520-21 (Tex. 2015) (explaining that generally, substantive arbitrability questions addressing the existence, enforceability, and scope of an agreement are for courts to decide, while procedural arbitrability questions addressing the construction and application of limits on that agreement are for arbitrators to decide). When an arbitration provision gives the arbitrator the power to resolve gateway issues regarding the validity and enforceability of the arbitration agreement, questions of substantive arbitrability are transferred from the court to the arbitrator. *IHS Acquisition*, 387 S.W.3d at 807. "These 'gateway matters' include whether the parties agreed to arbitrate and whether a claim or dispute is encompassed in the agreement to arbitrate." *Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 229 (Tex. App.—Dallas 2010, pet. denied) (citing *In re Labatt Food Serv., L.P.*, 279 S.W.3d at 643).

A trial court should not assume that the parties agreed to arbitrate substantive arbitrability unless there is clear and unmistakable evidence that they intended to do so. *Id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). If the agreement clearly demonstrates that the parties intended to confer on the arbitrator the power to determine what disputes are arbitrable, the

trial court lacks the power to decide that issue. *See First Options of Chicago, Inc.*, 514 U.S. at 943 (concluding the question of determining primary power to decide arbitrability turns upon what the parties agreed to regarding the matter). Thus, when an arbitration agreement clearly and unmistakably demonstrates the parties' intent to confer on the arbitrator the power to determine substantive arbitrability, questions regarding gateway issues that are normally decided by the court will be submitted to the arbitrator. *See id.*

Williford signed the 2013 arbitration agreement as a condition of his employment, and Williford agreed to arbitrate "all claims and controversies ("claims"), past, present, or future, whether or not arising out of [Williford's] employment or termination from employment[.]" The 2013 agreement provides that arbitrable claims include, but are not limited to, claims for wages or other compensation and tort claims. The agreement further provides that T.W. Odom and Williford agreed that claims for "workers' compensation, non-subscriber compensation or unemployment benefits[]" were not arbitrable.

The 2013 agreement states that "[t]he arbitration will be held under the auspices of the American Arbitration Association ("AAA")[,]" and "shall be in accordance with the AAA's then-current employment arbitration procedures." The agreement also references the AAA National Rules for Resolution of Employee

Disputes. Under the AAA's Employment Arbitration Rules, Rule 6, the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."[1] Additionally, the agreement states that "[t]he arbitrator, and not any federal, state, or local court or agency, shal[l] have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable." The 2013 agreement states that "this Agreement can only be revoked or modified by a writing signed by the parties which specifically states intent to revoke or modify this Agreement." The agreement further states that "this Agreement will remain valid and enforceable unless TW Odom Management Services LTD and I execute a subsequent arbitration agreement, which upon becoming and enforceable, shall take precedence over an[d] supersede this agreement."

T.W. Odom argues that Williford's suit seeks damages for T.W. Odom's alleged negligence, and not non-subscriber compensation benefits under the Plan.

---

[1] American Arbitration Association, EMPLOYMENT ARBITRATION RULES AND MEDIATION PROCEDURES, Rule 6, p.17, (Rules amended and effective Nov. 1, 2009), https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004362 &revision=latestreleased (last visited Aug. 8, 2016).

According to T.W. Odom, Williford's negligence claims concerning his workplace injury are tort claims that are covered by the arbitration agreement and therefore must be arbitrated under the agreement. The 2013 agreement clearly and unmistakably provides that the arbitrator has the power to resolve any disputes relating to the interpretation, applicability, and enforceability of the agreement, and Williford signed the agreement and assented to having the arbitrator decide these issues. T.W. Odom and Williford also agreed that any arbitration would be conducted in accordance with the AAA's employment arbitration procedures, and the agreement references the AAA's National Rules for Resolution of Employee Disputes. The parties agreed to a broad arbitration clause that expressly incorporated rules giving the arbitrator the power to rule on its own jurisdiction and to rule on any objections with respect to the existence, scope, or validity of the agreement.

The determination of whether the arbitration agreement imposes a duty to arbitrate the claims in a particular dispute is a matter of contract interpretation, and the 2013 agreement clearly provides that the arbitrator has the "exclusive authority to resolve any dispute relating to the interpretation . . . of this Agreement[.]" *See Jabri*, 108 S.W.3d at 410. The 2013 agreement clearly and unmistakably shows that T.W. Odom and Williford intended to delegate gateway issues relating to the

interpretation, applicability, or enforceability of the agreement to the arbitrator. *See Schlumberger Tech. Corp. v. Baker Hughes Inc.*, 355 S.W.3d 791, 802-03 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Saxa Inc.*, 312 S.W.3d at 230-31; *Haddock v. Quinn*, 287 S.W.3d 158, 172 (Tex. App.—Fort Worth 2009, pet. denied).

We conclude that the trial court erred by failing to allow the arbitrator to decide the parties' dispute concerning whether Williford's negligence claims fall within the scope of the 2013 agreement. *See McGehee v. Bowman*, 339 S.W.3d 820, 825-26 (Tex. App.—Dallas 2011, no pet.). Accordingly, the trial court abused its discretion by denying T.W. Odom's motion to compel arbitration. We sustain T.W. Odom's first issue. Because of our disposition of T.W. Odom's first issue, we need not consider T.W. Odom's remaining issue. *See* Tex. R. App. P. 47.1. We reverse the trial court's order denying T.W. Odom's motion to compel and remand this case to the trial court with instructions to enter an order granting the motion to compel arbitration and to stay the proceeding pending the results of arbitration.

REVERSED AND REMANDED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on July 20, 2016
Opinion Delivered August 25, 2016
Before McKeithen, C.J., Kreger and Johnson, JJ.