**Affirmed; Opinion Filed July 25, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01347-CV

### REDI-MIX, LLC D/B/A CUSTOM-CRETE, Appellant
### V.
### OSCAR R. MARTINEZ, Appellee

**On Appeal from the 95th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-08755**

## MEMORANDUM OPINION

Before Justices Lang, Myers, and Stoddart
Opinion by Justice Myers

Redi-Mix, LLC d/b/a Custom-Crete appeals the trial court's order denying its motion to compel arbitration of Oscar R. Martinez's suit against it. Appellant brings one issue on appeal contending the trial court abused its discretion by denying the motion to compel arbitration. We conclude that some evidence supports the trial court's order denying the motion to compel arbitration, and we affirm the order.

### BACKGROUND

Martinez alleged in his petition that he was "employed by the Defendant," "Custom-Crete, U.S. Concrete Company d/b/a Redi-Mix, LLC" from 1993 until his termination in 2016. He stated in the petition that he was a "loader/operator" and that he "also cleaned the offices." When a manager at the defendant made racist remarks about Mexicans, Martinez "reported his racism." In 2016, Martinez reported to the defendant's management that he had pain in his shoulder; however,

"the Defendant ignored him." Four months later, Martinez reported that the pain was worse, and he requested an accommodation. Martinez was then sent home. Later, someone from the defendant called him and said he had reviewed video footage of Martinez cleaning the offices. He told Martinez he "had too much arm movement on video," and he told Martinez he was terminated.

Martinez sued "Custom-Crete, U.S. Concrete Company d/b/a Redi-Mix, LLC" alleging the defendant terminated him unlawfully and violated the Texas Commission on Human Rights Act and the Texas Labor Code by discriminating against him based on his disability and his national origin. Appellant answered, stating it was misnamed in Martinez's petition. Appellant then filed a motion to compel arbitration and to stay further proceedings. Martinez responded, asserting there was no arbitration agreement between him and appellant. The trial court denied the motion to compel arbitration, and appellant filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West 2015) (permitting appeal of orders under the Federal Arbitration Act "under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16"); *id.* § 171.098 (West 2011) (permitting appeal of order denying motion to compel arbitration under Texas Arbitration Act); *see also* 9 U.S.C. § 16(a)(1)(B) (permitting appeal from order denying petition for order directing parties to arbitrate).

**ARBITRATION AGREEMENT**

The arbitration agreement in this case was part of an "Alternative Dispute Resolution Plan." The agreement stated any dispute regarding "Employee's employment with an Employer ('Redi-Mix, L.P.' or 'Redi-Mix Concrete, L.P.') shall be submitted to final and binding arbitration." The agreement stated it included claims "[t]hat Employer has treated Employee unfairly or discriminated against employee in connection with a work related injury," claims for "wrongful discharge," and "claims for discrimination (including but not limited to race, . . . national origin, . . . or medical condition, handicap or disability)." The agreement also indicated

–2–

in several places that the employer was "Redi-Mix, L.P. or Redi-Mix Concrete, L.P." or "Redi-Mix, L.P. and/or Redi-Mix Concrete, L.P." Martinez signed the agreement, but there was no signature or signature block for the employer. The agreement stated it "is expressly made pursuant to and shall be governed by Federal Arbitration Act." Although the agreement referred repeatedly to "Redi-Mix, L.P.," it did not mention appellant's correct name, "Redi-Mix, LLC."

## MOTION TO COMPEL

In its sole issue on appeal, appellant contends the trial court abused its discretion by denying appellant's motion to compel arbitration.

### Standard of Review

Under the Federal Arbitration Act, the courts decide "gateway matters," including whether a valid arbitration agreement exists. *G.T. Leach Builders, LLC v. Sapphire V.P., L.P.*, 458 S.W.3d 502, 519 (Tex. 2015); *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding). To make that determination, Texas courts apply Texas procedural rules. *In re Weekley Homes*, 180 S.W.3d at 130.

"We review an order denying a motion to compel arbitration under an abuse of discretion standard." *Bonded Builders Home Warranty Ass'n of Tex., Inc. v. Smith*, 488 S.W.3d 468, 476 (Tex. App.—Dallas 2016, no pet.). Under this standard of review, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *Bonded Builders*, 488 S.W.3d at 476. Whether an arbitration agreement is enforceable is subject to de novo review. *In re Labatt Food Serv., L.P.*, 279 S.W.3d at 643. Where, as here, the trial court makes no written findings of fact or conclusions of law in support of its ruling, "all facts necessary to support the judgment and supported by the evidence are implied." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009)

–3–

(quoting *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). We view the evidence in the light most favorable to the trial court's ruling and defer to the trial court's resolution of conflicting evidence. *INEOS Group Ltd. v. Chevron Phillips Chem. Co., LP*, 312 S.W.3d 843, 848 (Tex. App.—Houston [1st Dist.] 2009, no pet.). We affirm the ruling if it can be upheld on any legal theory supported by the evidence. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984) (per curiam). We reverse a trial court for abusing its discretion only when we determine the court acted in an unreasonable or arbitrary manner, meaning that it acted without reference to any guiding rules and principles. *Fitness Entertainment Ltd. v. Hurst*, 527 S.W.3d 699, 703 (Tex. App.—El Paso 2017, pet. denied).

### Contract Interpretation

Arbitration agreements are interpreted under traditional contract-interpretation principles. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). If a contract can be given a certain legal meaning or interpretation, then it is not ambiguous. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). An unambiguous contract is interpreted as a matter of law. *Id.* If a contract's meaning is uncertain and doubtful, or if the contract is reasonably susceptible to more than one meaning, then the contract is ambiguous. *Id.* The interpretation of an ambiguous contract is an issue for the trier of fact. *Id.* at 394. But if a contract is not ambiguous, "its construction and meaning become a question of law for the court to determine." *Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex. App.—Dallas 2005, no pet.) (quoting *Dedier v. Grossman*, 454 S.W.2d 231, 234 (Tex. Civ. App.—Dallas 1970, writ ref'd n.r.e.)). "[T]he primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Coker*, 650 S.W.2d at 393. "To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of a contract so that none will be rendered meaningless." *Id.* (emphasis omitted).

**Employment Arbitration Agreements**

A party seeking to compel arbitration must prove the existence of a valid arbitration agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 20005) (orig. proceeding). Part of this requirement is that the arbitration agreement be between the parties. *IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*, 387 S.W.3d 799, 809 (Tex. App.—El Paso 2012, no pet.). "An employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employee received notice of the employer's arbitration policy and accepted it." *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex. 2006) (orig. proceeding) (per curiam). Thus, for appellant to prevail on appeal, there must be no evidence in support of the trial court's implied finding that Martinez did not receive notice of appellant's arbitration policy and accept it. The question in this case is whether there is any evidence that the arbitration policy presented to Martinez was not appellant's arbitration policy.

In support of its motion to compel arbitration, appellant presented the affidavit of its human resources manager, Amanda Washington. She testified about the circumstances under which Martinez signed the arbitration agreement:

> Redi-Mix[, LLC d/b/a Custom Crete] acquired Custom-Crete from Oldcastle Architectural Products Group, Inc. ("Oldcastle") in October 2014. Mr. Martinez was previously an employee of Oldcastle. As part of the acquisition, Redi-Mix required all new employees, including Mr. Martinez, to agree to the Alternative Dispute Resolution Plan and sign the Arbitration Agreement. I was present when Oscar Martinez, along with approximately 45 other employees, assembled in a conference room to discuss the Alternative Dispute Resolution Plan and sign the Arbitration Agreement. All employees were given an opportunity to review and ask questions before signing the Agreement. After the opportunity to review and ask questions, Mr. Martinez signed the Arbitration Agreement in Exhibit C on October 21, 2014. He then commenced his employment with Redi-Mix.

This testimony established that Martinez was appellant's employee, that he received notice of the arbitration policy, and that he continued working for appellant after receiving notice of the arbitration policy. Additionally, appellant attached copies of Martinez's W-2 form to its motion

to compel arbitration, which also proved Martinez worked for appellant. However, a fact question exists concerning whether the arbitration agreement was applicable to appellant. Washington did not testify, and no evidence shows, that Martinez was told the arbitration policy was appellant's, and the arbitration agreement and the Alternative Dispute Resolution Plan to which it was attached did not name appellant as the "Employer."

In the text of his response to the motion to compel arbitration, Martinez did not deny signing the arbitration agreement. On appeal, Martinez admits that appellant was his employer.[1] However, he asserted in his response to the motion to compel arbitration that appellant was not a party to the arbitration agreement, so there was no contract between the parties.

Appellant asserted in its reply to Martinez's response that it was a party to the agreement. The arbitration agreement states it applies to disputes between the "Employee" and the "Employer." The agreement defines the "Employer" as "'Redi-Mix, L.P.' or 'Redi-Mix Concrete, L.P.'" The arbitration agreement was part of appellant's Alternative Dispute Resolution Plan which had an effective date of January 1, 2007. Appellant presented evidence that in June 2007, there was a merger of Redi-Mix, L.P. and Redi-Mix Subsidiary, LLC. Pursuant to the Certificate of Merger filed with the Secretary of State, Redi-Mix Subisidiary, LLC was the surviving entity after the merger and that Redi-Mix, L.P. "will not survive the merger." Martinez signed the arbitration agreement on October 21, 2014, seven years after the merger and after Redi-Mix, L.P. ceased to exist. Appellant argued that the agreement's listing "Redi-Mix, L.P." as the "Employer" instead of appellant's correct name, "Redi-Mix, LLC," was a misnomer.

---

[1] In his affidavit attached to his response to the motion to compel arbitration, Martinez stated, "I to my knowledge never worked for the people Amanda Washington claims. I always took orders from U.S. Concrete/Custom-Crete." However, he served appellant with the suit. On appeal, Martinez does not deny that appellant was his employer. Nor does he deny that he sued appellant. Martinez stated in his appellee's brief that he "was employed by the Defendant-Appellant from February 9, 1993 until June 30, 2016." He defined "Defendant-Appellant" in his brief as "Redi-Mix, LLC d/b/a Custom-Crete," which is appellant's name *See City of San Antonio v. Hardee*, 70 S.W.3d 207, 212 (Tex. App.—San Antonio 2001, no pet.) (court of appeals "may accept admissions made in the briefs as true"). We conclude Martinez has admitted on appeal that he was employed by appellant and that there is no genuine issue of material fact regarding whether he was employed by appellant.

A misnomer occurs when the correct party is involved but a document misnames the party. *In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009) (per curiam) (orig. proceeding). As this Court stated in *AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319 (Tex. App.—Dallas 2014, pet. denied), "The rule as to misnomers in contracts, even for a corporate party, is well settled . . . ." *Id.* at 330.

> Modern law has departed from the strict rules of the common law as to use of the corporate name. As corporations are now able to contract almost as freely as natural persons, it is held that a departure from the strict name of a corporation will not avoid its contract if its identity substantially appears.

*Id.* (quoting *Houston Land & Loan Co. v. Danley*, 131 S.W. 1143, 1144 (Tex. Civ. App. 1910, no writ)). Courts will allow parties to correct misnomers in pleadings, judgments, and contracts so long as no one was misled by the mistake. *Id.*

This Court's opinion in *AmeriPath, Inc. v. Hebert* guides our analysis of this issue. In *AmeriPath*, the employee, Hebert, and "the Company," DFW 5.01(a) Corporation (DFW), sued one another concerning the enforceability of a covenant not to compete in the employment agreement. *AmeriPath*, 447 S.W.3d at 325–26. The agreement at issue was the fourth in a series of employment agreements between the parties. The first two agreements correctly named "the Company" as "DFW 5.01(a) Corporation." *Id.* at 324. However, the third and fourth agreements named "the Company" as "AmeriPath DFW 5.01(a) Corporation." *Id.* Hebert moved for summary judgment seeking a declaration that he was not bound by the covenant not to compete because the party named in the final contract, "AmeriPath DFW 5.01(a) Corporation," never existed. *Id.* at 325. He also moved for summary judgment on DFW's claims to enforce the employment agreement on the ground that he was not subject to the covenant not to compete. *Id.* at 325, 329. DFW responded to the motion for summary judgment, asserting the doctrine of misnomer. *Id.* at 329. Under the summary judgment burdens of proof, Hebert, as the movant for summary judgment, had to establish the unenforceability of the contract as a matter of law, while the

employer, as the respondent, had only to establish that there was a genuine issue of material fact concerning the contract's enforceability. *Id.*

In determining whether the doctrine of misnomer raised a fact question to bar Hebert's motion for summary judgment, we considered three questions: (1) was Hebert misled by the fact that the contract misnamed DFW; (2) was DFW's identity substantially apparent from the agreement, and (3) did the summary judgment evidence establish whether the parties intended and believed DFW was the contracting party. *Id.* at 330. Concerning the first question, misleading Hebert, the summary judgment record contained no evidence of whether Hebert was misled. Therefore, we could not say that Hebert "was somehow misled to his detriment by the misnaming of his employer." *Id.* at 331. On the second question, whether DFW's identity was substantially apparent from the fourth agreement, we observed that the correct and incorrect names used in the four agreements were similar, the only difference being the addition of the word "AmeriPath" before the otherwise-correct name. We also observed that the recitals in the fourth agreement referred to "the Company" in the previous agreements, including the first two agreements where DFW was correctly named. *Id.* Therefore, "the recitals support[ed] the conclusion that the parties in the [fourth agreement] were—for the fourth time—Hebert and DFW." *Id.* at 332. Concerning the third question, the parties' intent, we observed, "Among the most significant evidence that the [fourth agreement] was intended to be between Hebert and DFW is the fact that the fundamental promises made by the Company in that agreement were performed by DFW." *Id.* This evidence included that DFW employed Hebert as a pathologist and managing director and that Hebert fulfilled those services. The evidence also included the fact that Hebert signed a contract for DFW as DFW's managing director, which indicated he knew he was employed by DFW. *Id.* We concluded the case "[did] not fall within the ambit of cases addressing contracts with non-existing business entities. Instead, the summary judgment evidence makes clear that Hebert contracted

–8–

with DFW . . . ." *Id.* at 334. We reversed the trial court's grant of summary judgment in favor of Hebert. *Id.*

Comparing this case to *AmeriPath* shows that the burdens of proof are reversed. In both cases, the employer was the party seeking to enforce the contract and was the party asserting the doctrine of misnomer. In *AmeriPath*, the employer was the respondent to the employee's motion for summary judgment and therefore had the lesser burden of raising only a fact question on each element of the doctrine of misnomer. In this case, the employer is the party seeking to overturn a trial court ruling, which imposes the greater burden of establishing that no evidence supported the trial court's ruling.

The three questions considered in *AmeriPath*, as applied to the fact of this case, are:

(1) Was Martinez misled by the fact that the agreement named "Redi-Mix, L.P." instead of "Redi-Mix, LLC"?

(2) Is appellant's identity substantially apparent from the agreement? And,

(3) Does the evidence in the motion to compel arbitration demonstrate that the parties intended and believed the contracting party to be appellant?

*See id.* at 330.

Concerning whether Martinez was misled, the record in this case, as in *Ameripath*, contains no evidence one way or the other. *See id.* at 331. Therefore, we cannot say the evidence conclusively establishes that Martinez was not misled.

On the second question, whether appellant's identity was apparent from the agreement, the evidence does not explain how appellant was intended to be the named party in the arbitration agreement. Appellant points out that the only difference between its true name, Redi-Mix, LLC, and its name in the arbitration agreement, Redi-Mix, L.P., is the change from L.P. to LLC. Although that is true, the merger documents attached to appellant's reply to the response to the motion to compel raise a fact question as to the identity of the "Employer" in the arbitration

–9–

agreement. The merger documents may establish a misnomer in the arbitration agreement, but the only misnomer they may establish is that the references to "Redi-Mix, L.P." in the arbitration agreement should have been to "Redi-Mix Subsidiary, LLC," not "Redi-Mix, LLC." Appellant's motion to compel arbitration does not explain how, or whether, Redi-Mix Subsidiary, LLC became Redi-Mix, LLC. In its reply brief on appeal, appellant states, "Redi-Mix Subsidiary, LLC chang[ed] its name to Redi-Mix, LLC in conjunction with the merger. As a result, Redi-Mix Subsidiary, LLC and Redi-Mix, LLC are the same." In support of this statement, appellant cites Washington's affidavit where she states, "Redi-Mix, LLC is the surviving entity between a June 28, 2007 merger of Redi-Mix, LLC and Redi-Mix, LP [sic]. Redi-Mix, LP [sic] was the non-surviving entity." Washington's statement that "Redi-Mix, LLC is the surviving entity" is contradicted by the merger records, which state that "Redi-Mix Subsidiary, LLC" was the surviving entity. Appellant's argument asks us to infer from the evidence that Redi-Mix Subsidiary, LLC changed its to name Redi-Mix, LLC. However, the standards of review do not permit us to make inferences that are contrary to the trial court's ruling. *See INEOS Group Ltd.*, 312 S.W.3d at 848 (in abuse-of-discretion procedure, we view evidence in light most favorable to trial court's ruling and defer to trial court's resolution of conflicting evidence). In *AmeriPath*, there were prior employment agreements between the parties that correctly named the employer; in this case, however, there are no prior arbitration agreements where appellant was correctly named. *See AmeriPath*, at 331–32. We conclude appellant's identity was not substantially apparent from the arbitration agreement.

On the third question, whether the evidence conclusively demonstrated that the parties intended and believed the contracting party to be appellant, the only evidence is the agreement itself and Washington's affidavit describing the meeting where Martinez signed the arbitration agreement. As discussed above, Washington's description of the meeting does not state Martinez

was told the arbitration agreement he signed applied to his employment with "Redi-Mix, LLC," and the standards of review do not permit us to infer that he should have known. The evidence raises a fact question concerning who is the "Employer" in the arbitration agreement, whether it is "Redi-Mix Subsidiary, LLC" as the successor to Redi-Mix, L.P. as the merger documents show or whether it is Redi-Mix, LLC as the successor to Redi-Mix, L.P. as Washington testified.

In support of its motion to compel, appellant also cites *IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*, 387 S.W.3d 799 (Tex. App.—El Paso 2012, no pet.). In that case, the employee sued the employer for workplace discrimination, and the employer filed a motion to compel arbitration, which the trial court denied. *Id.* at 803. The employer was IHS Acquisition 171, but the arbitration agreement stated the "Employer" was IHS Acquisition 174. The court of appeals addressed the issue of misnomer and concluded the trial court erred by denying the motion to compel arbitration:

> Even though the Agreement provides that issues of validity and enforceability must go to an arbitrator, Appellants [the employer] still bear the burden of producing some evidence that they were either a party to the Agreement or otherwise had rights to enforce it. They presented an Agreement which is clearly between an Employer and Employee. Although the Agreement defines the Employer as IHS Acquisition 17*4,* Appellants also produced evidence that at the time the Agreement was signed, Beatty was employed by IHS Acquisitions [sic] 17*1* and that Beatty had never been employed by IHS 17*4.*

*Id.* at 809–10. Appellant argues that if *IHS Acquisition* is applied in this case, then appellant should prevail because it, like IHS Acquisition, presented uncontroverted evidence of an arbitration agreement signed by Martinez that was clearly between an employer and an employee, and evidence that Martinez was employed by appellant and had never been employed by Redi-Mix, L.P. The facts in the case before us, however, differ from those in *IHS Acquisition*. In *IHS Acquisition*, the employer maintained the difference in the names was due to a scrivener's error in the arbitration agreement. *Id.* at 805. In this, case, however, appellant's theory was that when the arbitration agreement was created in 2007, it correctly named Redi-Mix, L.P. as the "Employer," but after the merger, appellant, Redi-Mix, LLC, became the "Employer." However, the merger

–11–

documents did not prove that theory but instead presented evidence that the surviving entity was "Redi-Mix Subsidiary, LLC," not appellant. Although appellant tries to explain in its reply brief that its name, Redi-Mix, LLC was the result of Redi-Mix Subsidiary, LLC changing its name as part of the merger, no evidence in the record supports that statement. Therefore, a fact question remains in this case that did not exist in *IHS Acquisition*.

Appellant also cites *Raya v. Rio Management Co., LLC*, No. 13-13-00711-CV, 2015 WL 4504696 (Tex. App.—Corpus Christi 2015, no pet.) (mem. op.). In that case, the employee-plaintiff worked for Rio Management Co., and he injured himself while at work on the premises of Wyatt Hidalgo Farms, Inc. *Id.* at *1. He sued Rio for his injuries sustained in the course and scope of his employment, and he sued Wyatt Hidalgo Farms, Inc. under a premises liability cause of action. The plaintiff had signed an arbitration agreement requiring him to arbitrate his claims against Rio and his claims against "Wyatt Farms, Inc." The employee asserted he should not have had to arbitrate his claims against Wyatt Hidalgo Farms, Inc. because it was not named in the arbitration agreement. Rio argued that "Wyatt Farms, Inc." in the arbitration agreement was a misnomer and that it meant "Wyatt Hidalgo Farms, Inc." *Id.* "As proof, Rio submitted the affidavit of Rio's Human Resources and Safety Director . . . explaining the misnomer." *Id.* Rio also argued that even if there was no misnomer, then the plaintiff still had to arbitrate its claims against Wyatt Hidalgo Farms, Inc. because it was an affiliate of Rio. *Id.* The court of appeals agreed with Rio under both arguments, that Rio presented evidence proving the misnomer and that "Wyatt Farms, Inc." in the arbitration agreement meant "Wyatt Hidalgo Farms, Inc." and that the plaintiff had to arbitrate its claims against Wyatt Hidalgo Farms, Inc. because it was Rio's affiliate. *Id.* at *3–4. We conclude *Raya* is distinguishable. In this case, appellant tried to explain the misnomer through Washington's affidavit and the merger documents, but that explanation created a fact question. Also, appellant presented no evidence that Redi-Mix, LLC

was Redi-Mix, L.P.'s affiliate but proved instead that Redi-Mix, L.P. was an entity that ceased to exist seven years before Martinez signed the arbitration agreement. As discussed above, the evidence proved the relationship between Redi-Mix, L.P. and Redi-Mix Subsidiary, LLC, but no evidence shows the relationship, if any, between appellant and Redi-Mix Subsidiary, LLC. Although Washington's affidavit purports to show the relationship between appellant Redi-Mix, L.P., that appellant was the surviving entity of a merger, Washington's testimony is contradicted by the merger documents.

We conclude appellant failed to meet its burden of showing that no evidence supported the trial court's decision to deny the motion to compel arbitration. Instead, we conclude some evidence supports the trial court's denial of the motion to compel arbitration. Therefore, appellant has not shown the trial court abused its discretion by denying the motion to compel arbitration. We overrule appellant's issue on appeal.

## CONCLUSION

We affirm the trial court's order denying the motion to compel arbitration.

/Lana Myers/
LANA MYERS
JUSTICE

171347F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

REDI-MIX, LLC D/B/A CUSTOM-CRETE, Appellant

No. 05-17-01347-CV     V.

OSCAR R. MARTINEZ, Appellee

On Appeal from the 95th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-17-08755.
Opinion delivered by Justice Myers.
Justices Lang and Stoddart participating.

In accordance with this Court's opinion of this date, the order of the trial court denying the motion to compel arbitration is **AFFIRMED**.

It is **ORDERED** that appellee OSCAR R. MARTINEZ recover his costs of this appeal from appellant REDI-MIX, LLC D/B/A CUSTOM-CRETE.

Judgment entered this 25th day of July, 2018.